Sidney Powell (pro hac application forthcoming)
Sidney Powell PC
Texas Bar No. 16209700
(517) 763-7499
Sidney@federalappeals.com


Alexander Kolodin, AZ Bar No. 030826
Christopher Viskovic, AZ Bar No. 035860[1]
**KOLODIN LAW GROUP PLLC**
3443 N. Central Ave. Ste. 1009
Phoenix, AZ  85012
Telephone: (602) 730-2985
Facsimile: (602) 801-2539
E-Mail:
Alexander.Kolodin@KolodinLaw.com
CViskovic@KolodinLaw.com
SAtkinson@KolodinLaw.com (file copies)

*Attorneys for Plaintiffs*
*(Additional counsel listed on signature page)*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TYLER BOWYER, MICHAEL JOHN BURKE, NANCY COTTLE, JAKE HOFFMAN, ANTHONY KERN, CHRISTOPHER M. KING, JAMES R. LAMON, SAM MOORHEAD, ROBERT MONTGOMERY, LORAINE PELLEGRINO, GREG SAFSTEN, SALVATORE LUKE SCARMARDO, KELLI WARD, and MICHAEL WARD<br><br>Plaintiffs,<br><br>v.<br><br>DOUG DUCEY, in his official capacity as Governor of the State of Arizona, and KATIE HOBBS, in her official capacity as the Arizona Secretary of State<br><br>Defendants. | Case No.<br><br><br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

---

[1] District of Arizona admission scheduled for 12/9/2020.

COMES NOW Plaintiffs, Tyler Bowyer, Michael John Burke, Nancy Cottle, Jake Hoffman, Anthony Kern, Christopher M. King, James R. Lamon, Sam Moorhead, Robert Montgomery, Loraine Pellegrino, Greg Safsten, Salvatore Luke Scarmardo, Kelli Ward, and Michael Ward, by and through their undersigned counsel, and move that this Court grant them a temporary restraining order, with notice, pending adjudication of their request for preliminary injunctive relief.

**FACTS**

The facts relevant to this motion are set forth in the Complaint and its accompanying exhibits, all of which are respectfully incorporated herein by reference. We present only a summary.

After a general election and recount, Joe Biden has been declared the winner of Arizona's General Election for President by a difference of 10,457 votes. But the vote count certified by defendants on November 30, 2020 fails to recognize the votes are steeped in fraud. Hundreds of thousands of votes counted toward Mr. Biden's final tally were the product of fraudulent, illegal, ineligible and outright fictitious ballots. Plaintiffs support this claim through the evidence laid out in the Complaint which includes the following conclusions.

Section I presented the testimony of numerous fact witnesses attesting to conduct by Maricopa County election workers and Dominion employees that violated Arizona election laws. *See* Compl., Section I.

A Dominion employee admitted to two Affiants that he was manually "backing up" all voter data on a removable storage device, and removing the data every night to an undisclosed off-site location without any supervision by election officials, where such data could have been altered, and further expressly admitted to alteration of ballot adjudication files. *See* Compl., Section I.B.3.

Even more damning is the testimony of an Affiant who is a member of the Maricopa County Republican Committee and who oversaw Secretary of State's post-election certification of Dominion voting machines at the MCETC on November 18, 2020. This

Affiant attested to several Arizona election law violations and practices that discriminated against voters for President Trump and other Republican candidates that she observed there, including (1) arbitrarily low signature verification standards, that had the effect of ignoring this requirement altogether; (2) accepting signatures on absentee ballot voter envelopes that did not match the voter's name; (3) entire batches of absentee ballot envelopes to have the exact same handwriting; (4) Trump/Republican votes entered into the system and being switched to Biden/Democratic votes; and (5) election workers violating Maricopa County Election Department stated policy that it would permit "overvotes" where voters filled in the bubble vote for President Trump and also filled in his name as a write-in candidate. *See* Compl., Section I.B.4.

In Section II and III of the Complaint, Plaintiffs demonstrate through statistical analysis of voting results and technical analysis of voting machines and software that each of several distinct categories of voting fraud or batches of fraudulent ballots were larger than Biden's 10,457 margin.

Russell James Ramsland, Jr. is a member of the cybersecurity firm Allied Security Operations Group, LLC. His firm's study of the the publicly available data concerning Arizona's 2020 general elections results led him to conclude as follows: "**we believe to a reasonable degree of professional certainty that election results have been manipulated within the ES&S and Dominion systems in Arizona.**" (*See* Ex. 103) ¶9. Mr. Ramsland further attests that "**it is my professional opinion based on a reasonable degree of certainty that in Maricopa Co. these systems may have switched votes from one Presidential candidate to the other.**" *Id.*¶10.

The Declaration of Russell James Ramsland, Jr. also examines a number of "red flags" in the voting data, in particular, the historically unprecedented turnout levels. (*See* Ex. 103). Using publicly available data, Mr. Ramsland determined that 66 percent of Pima County precincts (164 of 248) had turn out above 80%, and at least 36 had turnout above 90%, and that 54 percent of Maricopa County precincts (300 of 558) had turnout of 80% or more, and at least 30 over 90%. *Id.* ¶14. The report concludes that these extraordinary,

and likely fraudulent, turnout levels "**compels the conclusion to a reasonable degree of professional certainty that the vote count in Arizona, in particular for Maricopa and Pima counties for candidates for President contain at least 100,724 illegal votes that must be disregarded.**" *Id.*¶14.

The Complaint provides testimony from several other experts who provided the summary opinions for illegal votes that should be discarded due to other categories of voting fraud:

- The report of William M. Briggs, Ph.D. estimating that absentee voters who were recorded as receiving ballots without requesting them to be 219,135 (*See id.*, Ex 101 at 1).

- Dr. Briggs also estimate the number of absentee voters who returned ballots that were recorded as unreturned was 86,845. (*See id.*).

- Matt Braynard used the National Change of Address database to identify votes by persons that moved out of state or subsequently registered to vote in another state for the 2020 election, and found a total of 5,790 ineligible votes. (*See id.*, Ex. 102).

- And Plaintiffs can show Mr. Biden received a statistically significant Advantage from the use of Dominion Machines in a nationwide Study, which conservatively estimates Biden's advantage at 62,282 votes.

Thus Mr. Ramsland, Dr. Briggs and statistician Brian Teasley identify distinct types of errors resulting in illegal or fictitious votes that are several times larger than Biden's margin of 10,457 (with the exception of Mr. Braynard's out-of-state or double voters that are still more than half of Biden's margin). If any of these categories of illegal voters were thrown out, it would change the result of the election, and give President Trump the second term that he actually won on Election Day.

Section III of the Complaint also provides testimony from experts regarding the security flaws in Arizona voting machines, in particular, Dominion Voting Systems ("Dominion") that allow Dominion, as well domestic and foreign actors, to alter, destroy, manipulate or exfiltrate ballot and other voting data, and potentially to do so without a trace due to an algorithm that configures the data, cleanses it to determine which votes are invalid

and which are valid before shuffling that results in a feed showing data with decimal points and reflecting that the algorithm changes together with Dominion's voluntary and unprotected logs preventing a genuine audit possibility. For example, the Complaint includes analyses of the Dominion software system, including one by a former US Military Intelligence expert concludes that the system and software have been accessible and were certainly compromised by rogue actors, such as Iran and China. (*See* Compl., Ex.105).

By using servers and employees connected with rogue actors and hostile foreign influences combined with numerous easily discoverable leaked credentials, Dominion allowed foreign adversaries to access data and intentionally provided access to their infrastructure in order to monitor and manipulate elections, including the most recent one in 2020. This constitutes a separate and independent ground to grant the declaratory and injunctive relief requested in the Complaint and this Motion.

## DISCUSSION

**Plaintiffs Have Standing**

Each Plaintiff has standing to bring the actions described in the Complaint, both as voters, and in the case of the following Plaintiffs as a nominee of the Republican Party to be a Presidential Elector on behalf of the State of Arizona: Tyler Bowyer, Nancy Cottle, Jake Hoffman, Anthony Kern, James R. Lamon, Sam Moorhead, Robert Montgomery, Loraine Pellegrino, Greg Safsten, Kelli Ward, and Michael Ward.

As a candidate for elective office, each Plaintiff "have a cognizable interest in ensuring that the final vote tally reflects the legally valid votes cast," as "[a]n inaccurate vote tally is a concrete and particularized injury to candidates such as the Electors." *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020) (affirming that Presidential Electors have Article III and prudential standing to challenge actions of Secretary of State in implementing or modifying State election laws); *see also McPherson v. Blacker*, 146 U.S. 1, 27 (1892); *Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 76 (2000) (per curiam).

**Plaintiffs are Entitled to Injunctive Relief**.

"To obtain a temporary restraining order or preliminary injunction, a plaintiff must show that '(1) [it] is likely to succeed on the merits, (2) [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). Alternatively, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied," *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)), *i.e.*, if the injunctive relief is in the public interest and failure to grant would result in irreparable harm to the plaintiff.

All elements are met here, under either standard.

"When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (emphasis added). The evidence shows not only that Defendants failed to administer the November 3, 2020 election in compliance with the manner prescribed by the Georgia legislature, but that Defendants committed a scheme and artifice to fraudulently and illegally manipulate the vote count to make certain the election of Joe Biden as President of the United States. This conduct violated Plaintiffs' constitutional rights under the Electors and Elections Clauses, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, as well as their rights as well their rights under Arizona law.

**Plaintiffs have a substantial likelihood of success.**

The Plaintiff does not need to demonstrate a likelihood of absolute success on the merits. "Instead, [it] must only show that [its] chances to succeed on his claims are 'better than negligible.' *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034,

1046 (7th Cir. 2017). (quoting *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999)). Alternatively, Plaintiffs may show that there is "a serious question going to the merits." *Cottrell*, 632 F.3d at 1135. Under either formulation, Plaintiffs have easily passed this bar.

Through detailed fact and expert testimony including documentary evidence contained in the Complaint and its exhibits, Plaintiffs have made a compelling showing that Defendants' intentional actions jeopardized the rights of Arizona citizens to select their leaders under the process set out by the Arizona Legislature through the commission of election frauds that violated state laws and the Equal Protection Clause in the United States Constitution. And pursuant to 42 U.S.C. § 1983, plaintiffs must demonstrate by a preponderance of the evidence that their constitutional rights to equal protection or due process were violated. *See, e.g., Jones v. Williams*, 791 F.3d 1023, 1037 (9th Cir. 2015).

The tally of ballots certified by Defendants giving Mr. Biden the lead with 10,457 votes cannot possibly stand in light of the thousands of illegal mail-in ballots that were improperly counted and the vote manipulation caused by the Dominion software.

Plaintiffs' equal protection claim is straightforward. The right of qualified citizens to vote in a state election involving federal candidates is recognized as a fundamental right under the Fourteenth Amendment of the United States Constitution. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 665 (1966). *See also Reynolds v. Sims,* 377 U.S. 533, 554 (1964) (The Fourteenth Amendment protects the "the right of all qualified citizens to vote, in state as well as in federal elections."). Indeed, ever since the *Slaughter-House Cases*, 83 U.S. 36 (1873), the United States Supreme Court has held that the Privileges or Immunities Clause of the Fourteenth Amendment protects certain rights of federal citizenship from state interference, including the right of citizens to directly elect members of Congress. *See Twining v. New Jersey*, 211 U.S. 78, 97 (1908) (citing *Ex parte Yarbrough*, 110 U.S. 651, 663-64 (1884)). *See also Oregon v. Mitchell*, 400 U.S. 112, 148-49 (1970) (Douglas, J., concurring) (collecting cases).

The fundamental right to vote protected by the Fourteenth Amendment is cherished in our nation because it "is preservative of other basic civil and political rights." *Reynolds*,

377 U.S. at 562; *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463,476 (6th Cir. 2008) ("The right to vote is a fundamental right, preservative of all rights."). Voters have a "right to cast a ballot in an election free from the taint of intimidation and fraud," *Burson v. Freeman*, 504 U.S. 191, 211 (1992), and "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam).

"Obviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted" if they are validly cast. *United States v. Classic*, 313 U.S. 299, 315 (1941). "[T]he right to have the vote counted" means counted "at full value without dilution or discount." *Reynolds*, 377 U.S. at 555, n.29 (quoting *South v. Peters*, 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)).

"Every voter in a federal . . . election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States,* 417 U.S. 211, 227 (1974); *see also Baker v. Carr,* 369 U.S. 186, 208 (1962). Invalid or fraudulent votes "debase[]" and "dilute" the weight of each validly cast vote. *See Anderson*, 417 U.S. at 227.

The right to an honest [count] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right or privilege secured to him by the laws and Constitution of the United States." *Anderson*, 417 U.S. at 226 (*quoting Prichard v. United States*, 181 F.2d 326, 331 (6th Cir.), *aff'd due to absence of quorum*, 339 U.S. 974 (1950)).

Practices that promote the casting of illegal or unreliable ballots or fail to contain basic minimum guarantees against such conduct, can violate the Fourteenth Amendment by leading to the dilution of validly cast ballots. *See Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."). States may

not, by arbitrary action or other unreasonable impairment, burden a citizen's right to vote. *See Baker v. Carr*, 369 U.S. 186, 208 (1962) ("citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution"). "Having once granted the right to vote on equal terms, the state may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05. Among other things, this requires "specific rules designed to ensure uniform treatment" in order to prevent "arbitrary and disparate treatment of voters." *Id*. at 106-07; *see also Dunn v. Bloomstein*, 405 U.S. 330, 336 (1972) (providing that each citizen "has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction"). Similarly, equal protection needs to be recognized in this case where many Arizona's citizens' lawful votes remained uncounted, and many were diluted by unlawful votes in violation of the Equal Protection clause.

### The Plaintiffs will suffer Irreparable Harm

"It is well established that the deprivation of constitutional rights," such as violations of the Fourteenth Amendment rights to Equal Protection and Due Process, "'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (*quoting Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (where plaintiff had proven a probability of success on the merits, the threatened loss of First Amendment freedoms "unquestionably constitutes irreparable injury"); *see also Preston v. Thompson*, 589 F.2d 300, 303 n.4 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm.").

Moreover, courts have specifically held that infringement on the fundamental right to vote constitutes irreparable injury. *See Ariz. Democratic Party v. Ariz. Republican Party*, 2016 WL 8669978, at *11 (D. Ariz. Nov. 4, 2016) (citing *Obama for Am. v. Husted*, 697 F.3d 423, 435 (6th Cir. 2012) ("A restriction on the fundamental right to vote ... constitutes irreparable injury."); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (holding that plaintiffs "would certainly suffer irreparable harm if their right to vote were impinged upon").

**The Balance of Equities & Public Interest**

The remaining two factors – the balance of the equities and the public interest – are frequently analyzed together, *see, e.g., Arizona Dream Act Coal. v. Brewer*, 818 F.3d 901, 920 (9th Cir. 2016), and both factors tip in favor Plaintiffs.  Granting Plaintiffs' primary request for injunctive relief, enjoining certification of the 2020 General Election results, or requiring Defendants to de-certify the results, would not only not impose a burden on Defendants, but would instead relieve Defendants of the obligation to take any further affirmative action.  The result would be to place the decision regarding certification and the selection of Presidential Electors back into the hands of the Arizona State Legislature, which is the ultimate decision maker under the Elections and Electors Clause of the U.S. Constitution.

Conversely, permitting Defendants' certification of an election so tainted by fraud and illegality that it would impose a certain and irreparable injury not only on Plaintiff, but would also irreparably harm the public interest insofar as it would undermine "[c]onfidence in the integrity of our electoral processes," which "is essential to the functioning of our participatory democracy."  *Purcell v. Gonzalez*, 127 S.Ct. 5, 7 (2006) (per curiam).

In this regard, Plaintiffs would highlight a recent Eleventh Circuit decision addressed a claim in 2018 related to Georgia's voting system and Dominion Voting Systems that bears on the likelihood of Plaintiffs' success on the merits and the balance of harms in the absence of injunctive relief:

> In summary, while further evidence will be necessary in the future, the Court finds that the combination of the statistical evidence and witness declarations in the record here (and the expert witness evidence in the related *Curling* case which the Court takes notice of) persuasively demonstrates the likelihood of Plaintiff succeeding on its claims. Plaintiff has shown a substantial likelihood of proving that the Secretary's failure to properly maintain a reliable and secure voter registration system has and will continue to result in the infringement of the rights of the voters to cast their **vote** and have their **votes** counted.

*Common Cause Georgia v. Kemp*, 347 F. Supp. 3d 1270, 1294-1295, (11th Cir. 2018).

Therefore, Plaintiffs ask that this court immediately enjoin Governor Ducey from transmitting the currently certified election results to the Electoral College pending trial on the merits. Plaintiffs also request that the Court immediately order that all servers, software, voting machines, tabulators, printers, portable media, logs, ballot applications, ballot return envelopes, ballot images, paper ballots, and all election materials related to the November 3, 2020 Arizona election sized and impounded for forensic audit and inspection by the Plaintiffs and that the Court award such other relief as is set forth in the attached proposed form of Order.

Respectfully submitted, this 1st day of December 2020.

| /s Sidney Powell* | /s Alexander Kolodin |
|---|---|
| Sidney Powell PC | Kolodin Law Group PLLC |
| Texas Bar No. 16209700 | AZ Bar No. 030826 |
| 2911 Turtle Creek Blvd, Suite 300 | 3443 N. Central Ave Ste 1009 |
| Dallas, Texas 75219 | Phoenix, AZ 85012 |

*Application for admission pro hac vice forthcoming

Of Counsel:
Emily P. Newman (Virginia Bar No. 84265)
Julia Z. Haller (D.C. Bar No. 466921)
Brandon Johnson (D.C. Bar No. 491730)

2911 Turtle Creek Blvd. Suite 300
Dallas, Texas 75219

*Application for admission pro hac vice Forthcoming

L. Lin Wood (Georgia Bar No. 774588)
L. LIN WOOD, P.C.
P.O. Box 52584
Atlanta, GA 30305-0584
Telephone: (404) 891-1402

Howard Kleinhendler (New York Bar No. 2657120)
Howard Kleinhendler Esquire
369 Lexington Ave. 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com

CERTIFICATION REGARDING NOTICE

**I Certify** that a copy of Plaintiffs' Complaint and this motion have been electronically transmitted to:

Jennifer Wright

Elections Integrity Unit

Office of the Arizona Attorney General

Jennifer.Wright@azag.gov

Attempts will be made to hand deliver copies of the same to the offices of Defendants.

s/Alexander Kolodin