ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

    Thomas P. Liddy (019384)
    Emily Craiger (021728)
    Joseph I. Vigil (018677)
    Joseph J. Branco (031474)
    Joseph E. LaRue (031348)
    Deputy County Attorneys
    liddyt@mcao.maricopa.gov
    craigere@mcao.maricopa.gov
    vigilj@mcao.maricopa.gov
    brancoj@mcao.maricopa.gov
    laruej@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
*Attorneys for Maricopa County Intervenors*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Tyler Bowyer, Michael John Burke, Nancy Cottle, Jake Hoffman, Anthony Kern, Christopher M. King, James R. Lamon, Sam Moorhead, Robert Montgomery, Loraine Pellegrino, Greg Safsten, Salvatore Luke Scarmardo, Kelli Ward, and Michael Ward,<br><br>    Plaintiffs,<br><br>v.<br><br>Doug Ducey, in his official capacity as Governor of the State of Arizona, and Katie Hobbs, in her official capacity as the Arizona Secretary of State<br><br>    Defendants. | NO. CV20-02321-PHX-DJH<br><br>**MARICOPA COUNTY INTERVENORS' MOTION TO DISMISS**<br><br>**AND**<br><br>**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Pursuant to Federal Rule of Civil Procedure 9(b), the Maricopa County Board of Supervisors and Maricopa County Recorder Adrian Fontes ("Maricopa County Intervenors") respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice because it utterly fails to "state with particularity the circumstances constituting fraud." Because Plaintiffs will not succeed on the merits and fail to raise "serious questions" with their woefully deficient fraud Complaint, this Court should deny the request for a temporary restraining order that would cause irreparable harm to the Maricopa County Intervenors. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (discussing elements for preliminary equitable relief); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). The following Memorandum of Points and Authorities supports this Motion.

## **Memorandum of Points and Authorities**

### **Introduction**

Plaintiffs' Complaint is a textbook example of why Federal Rule of Civil Procedure 9(b) exists. Nearly one month after the November 3, 2020 General Election, this is the best that Plaintiffs could put together: (1) declarations from partisan elections observers that do not allege fraud and are demonstrably confused about Arizona's voting laws and Maricopa County's practices, (2) "statistical" reports from "experts" who based their analyses on their subjective expectations of voter behavior, and (3) conspiracy-theory laden, unsigned, redacted declarations making wild accusations about Maricopa County's elections equipment vendor.

"When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). This Court should dismiss the Complaint under Rule 9(b) to avoid "squander[ing] enormous judicial resources resolving complex (and arguably novel) questions where nothing in Plaintiff[s'] submissions give the Court any assurances that this is not a 'fishing expedition for the discovery of unknown wrongs' of the precise

sort that Rule 9(b) is designed to smoke out." *California ex rel. Heryford v. Citigroup Inc.*, No. 216CV00469TLNEFB, 2018 WL 3197905, at *2 (E.D. Cal. June 26, 2018) (quoting *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1092 (9th Cir. 2004).

## Argument

**I.    The Court should dismiss this Complaint under Rule 9(b).**

"A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess*, 317 F.3d at 1107. Thus, as in the Rule 12(b)(6) context, this Court should assume the truth of well-pleaded factual allegations in the Rule 9(b) context. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). That assumption does not apply to "legal conclusions" or "conclusory statements." *Id.* Even under Rule 8(a)'s less-demanding standard, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. Rule Civ. Proc. 8(a)(2)).

"But Rule 9(b) clearly imposes an *additional* obligation on plaintiffs: the statement of the claim must *also* aver with particularity the circumstances constituting the fraud." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994). "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *Id.* "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged[.]" *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *see also Donohue v. Bd. of Elec. of State of N.Y.*, 435 F. Supp. 957, 966 (1976) ("It is necessary, first of all, to plead and prove specific acts of misconduct, including the time, place and circumstances of the alleged deprivation of the right to vote." (Citing Fed. R. Civ. P. 9(b)).

> Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also 'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to

>protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'

*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

To start, Plaintiffs' Complaint asserts alleged "violations" of Arizona elections law. (Doc. 1, ¶¶ 48–53). Notably, none of Plaintiffs' declarants allege fraud. (*See id.*; *see also* Doc. 1-10 at 18–40 (Exhs. 20–23)). They are the only declarants offered by Plaintiffs with any first-hand observation of Maricopa County's election administration.  The allegation that "[t]he [voting] machines make determinations on what ballots to invalidate or validate based on an algorithm that operates offshore before tallying the votes locally," does not find support in the declaration. (*Compare* Doc. 1, ¶ 49 *with* Doc. 1-10 at 18–24). At most, these declarants offer perceived irregularities with election administration. (Doc. 1-10 at 18–40).

Plaintiffs next offer allegations based on "expert witness testimony." (Doc. 1, ¶¶ 54–62). These allegations do not plead with particularity the circumstances constituting the alleged fraud. For example, the Briggs Report comes to the conclusion that over 300,000 Arizona ballots are "troublesome" based on an unexplained methodology applied to a multi-state phone survey—the "Braynard survey" with its own methodology that no declarant explains and for which the Briggs Report does not vouch. (*See* Doc. 1-2 at 14–17 ("I assume survey respondents are representative and the data is accurate."); *see also* Doc. 1-2 at 52 (providing tweets from Braynard instead of a signed declaration that does not address the "survey," but appears to address the alleged out-of-state voters)). Further, the allegations in this section are filled with qualifiers—"indicative of voter fraud," "predictive model"—and **fail to identify *any* defendant** that commited the alleged fraud. The allegations merely assert that certain ballots "*could have* been filled out by anyone and then submitted in the name of another voter," "*could be* filled in by third parties to shift the election to Joe Biden," "were either lost or destroyed (consistent with allegations

of Trump ballot destruction)[1] and/or were replaced with blank ballots filled out by election workers, Dominion or other third parties." (Doc. 1, ¶¶ 54–58 (emphasis added); *see also* Doc. 1-4 at 1–17 (analysis of "momentum" based on alleged voter registration trends)).

Similarly, the allegations based on the Ramsland Report produce qualifiers instead of particularity: "*likely* fraudulent"; "*could* have been manufactured," and—the best of the bunch—"*possibly* impossible." (*See* Doc. 1, ¶¶ 59–60 (emphasis added)). And Ramsland's analysis is based on his subjective expectation of voter behavior at the precinct level, not first-hand evidence of voter fraud.

Taken together, the Briggs Report, Ramsland Report, and Braynard tweetstorm conjur a number of "illegal votes" out of thin air. These fantastic allegations have no connection whatsoever to anyallegation made by the Arizona-based declarants. These reports cannot satisfy Rule 9(b).

Finally, the bulk of Plaintiffs' allegations attack the integrity of Dominion Voting Systems, one of Maricopa County's voting equipment vendors. (*See* Doc. 1, ¶¶ 63–102; *see also id.* at ¶¶ 5–13)). These attacks are largely based on conspiracy theories in unsigned,[2] redacted declarations. (*See, e.g.*, Doc. 1-2 at 5–12; Doc. 1-3 at 2–6; Doc. 1-5 at 1–56). They also draw on observations about Dominion voting equipment in other states without any allegation that Maricopa County uses the same equipment or that the County's elections officials committed fraud in this or any other election. (*See, e.g.*, Doc. 1-4 at 48–50; Doc. 1-3 at 23–69). Plaintiffs brazenly attempt to justify their flouting of Rule 9's

---

[1] Note: the Complaint does not appear to substantiate this conclusory allegation about ballot destruction at any point with a citation to any of the more than 300 pages of exhibits.

[2] Courts routinely reject the sufficiency of unsigned declarations. *See, e.g.*, *West v. Higgins*, 346 F. App'x 423, 426 (11th Cir. 2009) ("Federal law does provide an alternative to making a sworn statement, but requires that the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury."); *Alleva v. New York City Dep't of Investigation*, 696 F. Supp. 2d 273, 278 (E.D.N.Y. 2010) ("[T]he lack of a signature renders [the declarations] invalid under 28 U.S.C. § 1746, which requires the signature of the declarant.").

requirements by telling this Court that the system is set up to make fraud undetectable. (*See, e.g.*, Doc. 1, ¶ 8.) But that is not how Rule 9 works.

All told, Plaintiffs' Complaint does not "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). At most—and it is surely a stretch—the Arizona-based declarants have alleged "garden variety election irregularities." *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978).

> The federal court is not equipped nor empowered to supervise the administration of a local election. If every election irregularity or contested vote involved a federal violation, the court would be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law."

*Id.* at 1077.

Here, Plaintiffs request the extraordinary relief of decertifying Arizona's election by claiming "fraud" but fail to offer *any* evidence to support their claims. Because "the pleading could not possibly be cured by the allegation of other facts," *Bly–Magee*, 236 F.3d at 1019, this Court should dismiss with prejudice.

## II.     The Court should deny the request for preliminary equitable relief.

A movant can obtain preliminary equitable relief as a temporary restraining order or preliminary injunction by showing that (1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. A preliminary injunction may also be appropriate if a movant raises "serious questions going to the merits" and the "balance of hardships . . . tips sharply towards" it, provided that the movant satisfies the second and third *Winter* factors. *See All. for the Wild Rockies*, 632 F.3d at 1134–35.

Here, as explained above, Plaintiffs' woefully deficient Complaint ensures that it cannot succeed on the merits and does not raise "serious questions going to the merits." Further, given the purposes that animate Rule 9(a)—"to deter the filing of complaints as

a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis," *Bly-Magee*, 236 F.3d at 1018—the balance of hardships under these circumstances tips sharply in favor of the Maricopa County Intervenors, not Plaintiffs. The Maricopa County Intervenors will suffer irreparable harm if the Court grants Plaintiffs' preliminary equitable relief and orders "all servers, software, voting machines, tabulators, printers, portable media, logs, ballot applications, ballot return envelopes, ballot images, paper ballots, and all election materials related to the November 3, 2020 Arizona election s[e]ized and impounded for forensic audit and inspection by the Plaintiffs." (Doc. 2 at 11).

First, the County will not be able to perform important post-election tasks, including service and maintenance of the voting equipment and performing accounting and inventory duties. Second, the Maricopa County Intervenors have an upcoming election to administer in March, and the proposed fishing expedition threatens their preparations. All of this together threatens the right of citizens of Maricopa County to exercise their constitutional right to vote. In addition, members of the legislature, including the chairman of the committee with jurisdiction over election procedures, have requested the County to perform an "election day demonstration" of the County's voting equipment in early to mid-December in order to determine what changes to Arizona election law, if any, should be considered when the time comes to file bills in early January. The order the Plaintiffs request would frustrate the legislators' important objective to continue to improve elections and voting in Arizona.

Moreover, Plaintiffs' request for access to the software is incongruent with their absurd allegation about "the software's ability to hide its manipulation of votes from *any audit*," underscoring their Rule 9(b) deficiencies. (*See* Doc. 1, ¶ 8 (emphasis added)). Under these circumstances, Plaintiffs cannot satisfy *Winter*.

//

**Conclusion**

For these reasons, this Court should dismiss this Complaint under Rule 9(b) and deny Plaintiffs' motion for preliminary equitable relief.

**RESPECTFULLY** submitted this 4th day of December, 2020.

        ALLISTER ADEL
        MARICOPA COUNTY ATTORNEY

        BY: */s/Thomas P. Liddy*
           Thomas P. Liddy
           Emily Craiger
           Joseph I. Vigil
           Joseph J. Branco
           Joseph E. LaRue
           *Attorneys for Maricopa County Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4th, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ V. Sisneros*

S:\CIVIL\CIV\Matters\EC\2020\Bowyer v. Ducey EC20-0063\Pleadings\Bowyer_Motion to Dismiss_DRAFT 4_ tro included FINAL.docx