1 Alexis E. Danneman (Bar No. 030478)
Sarah R. Gonski (Bar No. 032567)
2 **PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
3 Phoenix, Arizona 85012-2788
Telephone:  (602) 351-8000
4 Facsimile:   (602) 648-7000
ADanneman@perkinscoie.com
5 SGonski@perkinscoie.com

6 Marc E. Elias*
Bruce V. Spiva*
7 John Devaney*
John M. Geise**
8 **PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
9 Washington, D.C. 20005-3960
Telephone:  (202) 654-6200
10 Facsimile:   (202) 654-6211
MElias@perkinscoie.com
11 BSpiva@perkinscoie.com
JDevaney@perkinscoie.com
12 JGeise@perkinscoie.com
*Admitted Pro Hac Vice
13 **Pro Hac Vice Application Pending
Additional Counsel Listed on Signature Page
14
Attorneys for Proposed-Intervenor Defendant
15

16                    **UNITED STATES DISTRICT COURT**
                              **DISTRICT OF ARIZONA**
17

18 Bowyer, et al.,

19                         Plaintiffs,                    No. 2:20-cv-02321-DJH

20                    v.                                  **PROPOSED INTERVENOR-
                                                           DEFENDANT'S RESPONSE TO
21 Ducey, et al.,                                          PLAINTIFFS' MOTION FOR A
                                                           TEMPORARY RESTRAINING
22                         Defendants.                     ORDER AND PRELIMINARY
                                                           INJUNCTION AND MOTION TO
23                                                         DISMISS**

24                                                        Expedited Election Matter

25                                                        Hon. Diane J. Humetewa

26

27

28

# I.    INTRODUCTION

This is the fourth complaint filed nationwide in the last nine days by attorneys Sidney Powell and L. Lin Wood and others in which they seek to baselessly undermine the legitimacy of the presidential election by fanning the flames of debunked conspiracies, relying on the same discredited or unnamed "experts." *See* Compl., *Feehan v. Wis. Elections Comm'n*, No. 2:20-cv-1771 (E.D. Wis. Dec. 1, 2020); Compl., *King v. Benson*, No. 2:20-cv-13134-LVP-RSW, ECF No. 1 (E.D. Mich. Nov. 25, 2020); Compl., *Pearson v. Kemp*, No. 1:20-cv-4809, ECF No. 1 (N.D. Ga. Nov. 25, 2020).[1] But Plaintiffs' counsel's willingness to propagate their fantastical allegations across multiple jurisdictions does not make their claims actionable or meritorious. To the contrary, there are multiple bases to dismiss this case outright, including lack of standing, laches, black letter Eleventh Amendment jurisprudence, and a total failure to state a cognizable claim for relief. In addition, basic principles of federalism and comity counsel abstention. But even if the Court were to reach Plaintiffs' claims, they can satisfy none of the factors that would justify the injunctive relief that they seek: they are not likely to succeed on their claims, they have failed to establish that they will suffer irreparable harm, and both the public interest and the equities weigh heavily against them. The Arizona Democratic Party ("ADP") respectfully requests that the Court deny Plaintiffs' request for temporary relief and dismiss this suit.[2]

# II.    BACKGROUND

More than 3.4 million Arizonans cast ballots in the November presidential election. The election is now over. President-elect Biden has won by more than 10,400 votes, the results have been certified, and the Certificate of Ascertainment has been sent to the Archivist of the United States. *See* Compl. ¶ 3. This case is only one in what has become a

---

[1] The Court need look no further than Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction here to see the cookie-cutter nature of this action. Dkt No. 2 at 6 (claiming entitlement to relief because Arizona officials failed to administer the election "in compliance with the manner prescribed by the Georgia legislature").

[2] The ADP's motion to intervene is pending before this court. Consistent with discussion at the scheduling conference (Doc. 28), ADP submits a joint response to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, within the combined limits of the briefs were they to have been filed individually.

constant drumbeat of baseless attempts to use the judiciary to overturn the clearly expressed will of the people. Since Election Day, the Trump Campaign and its supporters have filed a series of lawsuits raising legally deficient and credulous challenges across at least seven different states. In fact, this is the *seventh* such suit in Arizona alone, including a new case filed just today. One by one, these cases have been thoroughly rejected. This suit should promptly suffer the same fate.

Not only is this case meritless, it is far too late. Plaintiffs inexplicably waited until December 2nd to file—two days after Arizona officials certified the results of the election, and nearly a full month after the election itself. As evidenced by the Complaint, Plaintiffs' claims did not get better with age. Instead, the Complaint relies on wild conspiracy theories, the gist of which are that Arizona election officials "and their collaborators" are alleged to have engaged in an elaborate international conspiracy to "illegally and fraudulently manipulat[e] the vote" in President-elect Biden's favor, purportedly resulting in "hundreds of thousands" of invalid or illegal ballots being cast in Arizona. Compl. ¶¶ 2-3. As support, Plaintiffs attach an unexecuted "declaration" from an unidentified witness and an unexecuted expert witness report (Compl. Exs. 1, 14); reports from supposed experts who have refused to disclose their identities, making it impossible for Plaintiffs to carry their burden of proving admissibility (Compl. Exs. 4, 12, 13); a declaration from a witness who complains, among other things, that she was made to "f[eel] very unwelcome" at a polling location on October 23 because poll watchers were told they could not talk and who was "concerned" because poll workers "correctly" advised voters about their options if they over-voted (and voters generally chose an option the witness did not like) (Compl. Ex. 5); a document from the Maricopa County Republican Committee Chairwoman that Plaintiffs label a "declaration," but which is not signed under penalty of perjury and that appears to be a transcript from statements she made at a meeting with Republican State Representative Mark Finchem and other officials (Compl. Ex. 23); exhibits that have nothing to do with the 2020 presidential election in Arizona (*e.g.*, Compl. Exs. 6-8, 10-11B, 15-16, 18); and other documents that similarly lend no credence to Plaintiffs' claims of fraud and

1   irregularity (*e.g.*, Compl. Exs. 3, 20-22).

2         Plaintiffs also rely on other expert witness reports that, aside than being signed, have

3   no indicia of reliability whatsoever (*e.g.*, Compl. Exs. 2, 9, 17, 19). For the reasons set forth

4   in the ADP's experts' rebuttal reports, these expert reports are unreliable and based on

5   flawed methodology. [*See* Stephen Ansolabehere, Response to Report of Dr. William

6   Briggs ("Exhibit 1"); Jonathan Rodden, Expert Report ("Exhibit 2"); Michael C. Herron,

7   Expert Report ("Exhibit 3")]]

8         On these bases, Plaintiffs claim violations of the Elections and Electors Clauses,

9   Compl. ¶¶ 103-11, the Equal Protection Clause, *id.* ¶¶ 112-23, the Due Process Clause, *id.*

10   ¶¶ 124-34, and generalized "wide-spread ballot fraud," *id.* ¶¶ 135-41, and demand that the

11   Court order Defendants to (1) "de-certify" the election, (2) "disqualif[y]" Arizona's electors

12   "from counting toward the 2020 election," and (3) "direct[]" Arizona electors to "vote for

13   President Donald Trump." *Id.* ¶¶ 142-45. Plaintiffs have also moved for a temporary

14   restraining order and preliminary injunction on the same grounds. *See* Dkt. 2 at 2.

15         Plaintiffs recognize that Arizona law provides for an election contest to raise

16   assertions of fraud and misconduct, but fail to explain why, instead, they have turned to this

17   federal court. *See* Compl. ¶ 15 (citing A.R.S. § 16-672 in noting that "the factual basis of

18   this Complaint would also support an election contest under Arizona law"); A.R.S. § 16-

19   672 (providing for election contest for, e.g., "misconduct on the part of election board . . .

20   or on the part of any officer making or participating in a canvass for a state election" or

21   "[o]n account of illegal votes). Such a contest was separately brought by Plaintiff Kelli

22   Ward in Arizona State Superior Count in Maricopa County on November 24, 2020. *See*

23   *Ward v. Jackson*, No. CV2020-015285 (Maricopa Cty. Sup. Ct. Nov. 24, 2020). That

24   contest petition was denied by that court by a decision issued earlier today after a two-day

25   trial, in which the court found that found that the plaintiffs sorely failed to carry the burden

26   of proof. The Court addressed many of the same issues Plaintiffs raise here. As to claims

27   regarding insufficient opportunities to observe ballot counting, the Court held that those

28   claims were untimely given that "[t]he observation procedures for the November general

1    election were materially the same as for the August primary election, and any objection to
2    them should have been brought at a time when any legal deficiencies could have been
3    cured." *Ward v. Jackson*, No. CV2020-015285 (Maricopa Cty. Sup. Ct. Dec. 4. 2020)
4    ("Exhibit 4"). After a thorough review of the evidence regarding signature matching
5    presented by both sides and testimony by forensic document examiners, the Court found
6    that there was "no evidence that the manner in which signatures were reviewed was
7    designed to benefit one candidate or another, or that there was any misconduct, impropriety,
8    or violation of Arizona law with respect to the review of mail-in ballots. *Id*. at 7. Finally, as
9    to illegal votes, the Court concluded that "the evidence did not prove illegal votes, much
10   less enough to affect the outcome of the election." *Id.* at 8. The Arizona Supreme Court has
11   advised that briefs in the matter will be due Monday before noon.

12                          **III.    LEGAL STANDARD**

13        **Motion to Dismiss**. In deciding a motion to dismiss, the Court presumes the veracity
14   of all well-pleaded material allegations in the Complaint, *Arizona Students' Ass'n v.*
15   *Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016), but "a plaintiff's obligation to
16   provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
17   conclusions, and a formulaic recitation of the elements of a cause of action will not do."
18   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed.
19   R. Civ. P. 8(a)). "[C]onclusory allegations of law and unwarranted inferences are
20   insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash.*
21   *Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

22        **Motion for Preliminary Injunction**. Plaintiffs bear the burden of showing they (1)
23   are "likely to succeed on the merits," (2) are "likely to suffer irreparable harm in the absence
24   of preliminary relief," (3) "the balance of equities tips in" their "favor," (4) and "an
25   injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20
26   (2008). This is a demanding standard in any case but, where, as here, Plaintiffs seek a
27   mandatory injunction, it is heightened. *See, e.g.*, *Garcia v. Google, Inc.*, 786 F.3d 733, 740
28   (9th Cir. 2015) (holding relief is not warranted "unless the facts and law clearly favor the

moving party." (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)).

## IV.   ARGUMENT

**A.   The Court should dismiss this case because Plaintiffs lack standing.**

To avoid dismissal on Article III grounds, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs fail all three prongs.

**No cognizable injury-in-fact**. Plaintiffs have failed to establish that they have suffered an injury fact sufficient to maintain any of their claims. As to their due process and equal protection claims in Counts II and III (as well as their freestanding fraud claim in Count IV, for which they cite neither a constitutional nor statutory basis), Plaintiffs do not allege that they were deprived of the right to vote; instead, they allege they are harmed by purported violations of Arizona law which "diluted" their votes. Compl. ¶¶ 117, 129, 140. But this theory of vote-dilution-through-unlawful-voting has been thoroughly and repeatedly rejected by federal courts as a viable basis for standing (including several in the last few weeks alone). *See, e.g.*, *Bognet v. Sec'y of Commonwealth*, No. 20-3214, 2020 WL 6686120, at *11-14 (3d Cir. Nov. 13, 2020) (rejecting identical theory and explaining "[t]his conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment"); *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445 JCM (VCF), 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) (similar).

Thus, in *Donald J. Trump for President v. Boockvar*, the court rejected a challenge to Pennsylvania's restrictions on poll watchers and ballot challenges under the theory, like here, that the state's practices would lead to fraud and thus dilution of lawfully submitted votes. The court found that the fears of voter fraud that animated the claims were "based on a series of speculative events—which falls short of the requirement to establish a concrete injury." 2020 WL 5997680, at *33. Other cases have reached similar results. *See, e.g.*, *Martel v Condos*, No. 5:20-cv-131, 2020 WL 5755289, at *3-5 (D. Vt. Sept. 16, 2020)

1    (holding voters challenging a directive expanding vote-by-mail lacked concrete and

2    particularized injury necessary for standing); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 925-

3    26 (D. Nev. 2020) (same); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779,

4    789 (W.D. Tex. 2015) ("[T]he risk of vote dilution" as a result of allegedly inaccurate voter

5    rolls "[is] speculative and, as such, [is] more akin to a generalized grievance about the

6    government than an injury in fact."). Plaintiffs' claims are similarly insufficient.

7         Plaintiffs also claim they have suffered harm as a result of alleged violations of the

8    Elections and Electors Clauses, but that injury, too, has been repeatedly rejected as

9    "precisely the kind of undifferentiated, generalized grievance about the conduct of

10   government" insufficient to constitute an injury for Article III standing. *Lance v. Coffman*,

11   549 U.S. 437, 442 (2007) (per curiam); *accord Wood v. Raffensperger*, No. 1:20-cv-04561-

12   SDG, 2020 WL 6817513, at *5 (N.D. Ga. Nov. 20, 2020).

13        Plaintiffs' reliance on *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020), in

14   which the Eighth Circuit held that "[a]n inaccurate vote tally is a concrete and particularized

15   injury" to electors under the theory that Minnesota electors are candidates for office under

16   Minnesota law, is misplaced. *See* Compl. ¶ 32. *Carson* is neither binding on this Court nor

17   in the legal mainstream; federal courts have *repeatedly* held that even candidates for office

18   lack Article III standing to challenge alleged violations of state law under the Elections

19   Clause. *See Bognet*, 2020 WL 6686120, at *6-7 (voters and candidate lacked standing to

20   bring claims under Elections and Electors Clauses); *id.* at *8 n.6 (rejecting *Carson* as being

21   based on an incorrect reading of *Bond v. U.S.*, 564 U.S. 211 (2011)); *Hotze v. Hollins*, No.

22   4:20-cv-03709, 2020 WL 6437668, at *2 (S.D. Tex. Nov. 2, 2020) (holding candidate

23   lacked standing under Elections Clause and concluding that Supreme Court's cases "stand

24   for the proposition that only the state legislature (or a majority of the members thereof) have

25   standing to assert a violation of the Elections Clause," but not individuals such as Plaintiffs

26

27

28

1    here).[3] Neither of the additional cases Plaintiffs cite in their TRO motion fix this

2    fundamental flaw because they do not mention or address Article III standing to bring

3    claims under either Clause whatsoever, and Plaintiffs provides no explanation regarding

4    either case's significance. *See* Dkt. 2 at 5 (citing *McPherson v. Blacker*, 146 U.S. 1, 27

5    (1892); *Bush v. Palm Beach Cnty. Canvassing Bd.*, 531 U.S. 70, 76 (2000) (per curiam)).

6        **No traceability**. Plaintiffs have also failed to allege facts sufficient to established

7    that their injuries are traceable to Defendants. Taking Plaintiffs' claims at face value, they

8    appear to involve two things. First, a widespread conspiracy plot by both foreign and state

9    nefarious actors to cast tens of thousands of "illegal" votes in Arizona. *See generally* Compl.

10   And, second, actions by local officials which Plaintiffs purport did not follow state law. *Id.*

11   ¶¶ 46-53. Neither conduct is traceable to Governor Ducey or Secretary Hobbs. As to

12   Plaintiffs' outlandish claims of purported voter fraud by tens of thousands of persons

13   unknown, any purported injuries here would be the result of the actions of unidentified

14   criminal actors not before this Court. And, similarly, purported violations of state law by

15   local elections officials are not traceable to the Governor or the Secretary. This lack of

16   traceability dooms Plaintiffs' standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–

17   61 (1992) (requiring causal connection between injury and defendant's conduct).

18       **No redressability**. Finally, Plaintiffs' injuries are also not redressable by these

19   Defendants.

20       *First*, Plaintiffs cite no authority for the proposition that a federal court has the power

21   to order Arizona state officials to "de-certify" an election they have already certified. This

22   claim relies entirely on provisions of Arizona law allowing a state court, following an

23   election contest duly filed in state court and in compliance with state law, to "se[t] aside the

24   election" or hold that a certificate of election "is of no further legal force or effect." A.R.S.

---

26       [3] Although separate constitutional provisions, the Electors and Elections Clauses
     share "considerable similarity" and should be interpreted in the same manner. *Ariz. State
27   Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 839 (2015) (Roberts, C.J.,
     dissenting); *see also Bognet*, 2020 WL 6686120, at *7 (applying same test for standing
28   under both Elections and Electors Clauses).

§ 16-676; *see* Compl. ¶ 16 (stating "the relief sought is in accord with Arizona law" and citing to A.R.S. § 16-676). But the fact that Arizona's legislature has given *Arizona* courts this power following an election contest does not mean that either the Secretary or Governor—or a *federal* court for that matter—possess that power. To the contrary, as required by the U.S. Supreme Court's decision in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), the Eleventh Amendment prohibits a federal court from issuing an injunction ordering a state official to comply with state law. Federal courts also are prohibited from ordering state officials to take an action that they *lack* the ability to do under state law. *See, e.g.*, *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) ("[A] state official cannot be enjoined to act in any way that is beyond his authority to act in the first place.").

*Second*, Plaintiffs' similar request that this Court order an injunction to prevent Governor Ducey "from transmitting the currently certified electoral results [to] the Electoral College" is a factual impossibility. Compl. ¶ 145. The Certificate of Ascertainment has already been transmitted. *See* Nat'l Archives, *2020 Electoral College Results*, https://www.archives.gov/electoral-college/2020 (linking to Arizona's Certificate of Ascertainment, indicating it has already been sent to and received by the Archivist of the United States). Thus, one consequence of Plaintiffs' delay in bringing suit is it has rendered this Court unable to issue the relief they seek.

In sum, Plaintiffs meet none of the three requirements for Article III standing and this Court should dismiss their Complaint on that basis alone.

**B.     The doctrine of laches bars Plaintiffs' claims.**

Even if Plaintiffs were able to establish that they have standing to pursue their claims (and, for the reasons discussed above, they do not), the doctrine of laches independently requires the dismissal of their Complaint. Laches bars a claim when plaintiff engaged in unreasonable delay that prejudiced the defendant. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). Federal and state courts alike routinely apply laches to bar untimely claims for injunctive relief in election cases. *See, e.g.*, *Soules v. Kauaians for*

1    *Nukolii Campaign Comm.*, 849 F.2d 1176, 1181 (9th Cir. 1988) (upholding district court

2    decision barring equal protection claim in elections case on basis of laches because

3    "appellants knew the basis for their alleged equal protection challenge well in advance of

4    the proposed special election" and "appellants [] failed to explain adequately their failure

5    to press this claim before the election"); *Ariz. Libertarian Party v. Reagan*, 189 F. Supp. 3d

6    920, 922–23 (D. Ariz. 2016) (Campbell, J.) ("In the context of election matters, the laches

7    doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable

8    delay prejudices the opposing party or the administration of justice." (citation omitted)); *see*

9    *also Kistner v. Simon*, No. A20-1486, slip op. at 3-4 (Minn. Dec. 4, 2020) ("Exhibit 5")

10   (dismissing two counts of post-election challenge on basis of laches because procedures

11   plaintiffs complained of were publicly known well before election). Under this doctrine,

12   Plaintiffs' extraordinary delay in bringing this case warrants outright dismissal of the

13   Complaint. But at the very least, it bars their request for preliminary injunctive relief.

14          Each element of laches is satisfied here. First, Plaintiffs "unreasonabl[y] delay[ed],"

15   in asserting these claims. *Ariz. Libertarian Party*, 189 F. Supp. 3d at 922. The general

16   election occurred on November 3, and much of Plaintiffs' "evidence" relates to events that

17   purportedly occurred weeks, months, or even years before then. *See, e.g.*, Compl. ¶ 7

18   (referencing events which occurred in 2009); *id.* ¶ 72 (relying on an 11th Circuit case from

19   2018*); see also Kistner*, No. A20-1486, slip op. at 3-4. Yet Plaintiffs waited nearly a month

20   after the election—and until after Arizona had certified its presidential election results—to

21   seek relief. Plaintiffs concede that if they are granted relief, there would now "certainly not

22   be time to hold a new election." Compl. ¶ 17. Plaintiffs can offer no credible reason why

23   this Court should not find that they "could have, and should have," brought this lawsuit

24   much earlier. *Id.*; *see also Ariz. Pub. Integrity All. Inc. v. Bennett*, No. CV-14-01044-PHX-

25   NVW, 2014 WL 3715130, at *2 (D. Ariz. June 23, 2014) ("Had Plaintiffs filed suit

26   promptly, a motion for preliminary injunction could have been briefed and decided without

27   unreasonable burden on the Defendant, the Court, and the election process.").

28          Second, the other parties, the public, and the administration of justice would be

1   prejudiced if the Court excused Plaintiffs' delay in bring this suit. *See Ariz. Libertarian*

2   *Party*, 189 F. Supp. 3d at 922–23. Plaintiffs' requested relief would disenfranchise some,

3   or all, of Arizona's voters *after* voting has concluded and "erode [] confidence in the

4   electoral process." *Wood*, 2020 WL 6817513, at *8. "Interference with impending elections

5   is extraordinary, and interference with an election after voting has begun is unprecedented."

6   *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (citing

7   *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)). Indeed, such relief would at a bare minimum

8   "cast an unacceptable degree of uncertainty over the election." *Kistner*, No. A20-1486, slip

9   op. at 4 The doctrine of laches bars Plaintiff's claims.

10  **C.    The Eleventh Amendment bars Plaintiffs' claims.**

11          In addition to the hurdles described above, the Eleventh Amendment also separately

12  and independently bars Plaintiffs' claims. As noted *supra*, the Eleventh Amendment

13  prohibits federal courts from granting "relief against state officials on the basis of state law,

14  whether prospective or retroactive." *Pennhurst*, 465 U.S. at 106; *see also Students of Cal.*

15  *Sch. for the Blind v. Honig*, 745 F.2d 582, 586 (9th Cir. 1984) ("The Supreme Court decided

16  in *Pennhurst*" that the Eleventh Amendment "stands as an absolute bar to actions in federal

17  court alleging that state officials have violated state law"). This is true even when state law

18  claims are styled as federal causes of action. *See, e.g.*, *Massey v. Coon*, No. 87-3768, 1989

19  WL 884, at *2 (9th Cir. Jan. 3, 1989) (affirming dismissal where "on its face the complaint

20  states a claim under the due process and equal protection clauses of the Constitution, [but]

21  these constitutional claims are entirely based on the failure of defendants to conform to state

22  law"); *Balsam v. Sec'y of State*, 607 F. App'x 177, 183–84 (3d Cir. 2015) (finding Eleventh

23  Amendment bars state law claims even when "premised on violations of the federal

24  Constitution").

25          None of Plaintiffs' claims can reasonably be found to escape this bar. It most clearly

26  prohibits Plaintiffs' free-standing fraud claim in Count IV, in which Plaintiffs' assert that

27  the fraud alleged in the Complaint should result in the invalidation of ballots based on

28  binding Arizona law. Compl. ¶ 138. But it is also true of Plaintiffs' other claims, each of

which, although ostensibly cloaked in the garb of a federal cause of action, ultimately ask the Court to determine that state officials violated state law and compel state officials to do what Plaintiffs believe *Arizona* law requires. This is evidenced by even a cursory review of Plaintiffs' other three purported federal claims. Count I, Plaintiffs' purported Elections and Electors Clause claim, asserts (without stating exactly how) that Plaintiffs violated the U.S. Constitution by exercising powers that are the province of the Arizona Legislature. Compl. ¶ 106. To the extent this is a claim at all (or one that Plaintiffs could assert), it is one about a violation of state separation of powers and is not a federal claim. Count II, Plaintiffs' purported equal protection clause claim, relies on the assertion that Defendants should not be allowed to count any ballots that a poll watcher (or challenger) was unable to observe. *See id.* ¶ 120. But there is no constitutional right to poll watching or observation; any "right" to do so is purely a creature of state law. *See, e.g.*, *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-966, 2020 WL 5997680, at *67 (W.D. Pa., Oct. 10, 2020) ("[T]here is no individual constitutional right to serve as a poll watcher." (quoting *Pa. Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644, at *30 (Pa. Sept. 17, 2020))); *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 413-414 (E.D. Pa. 2016) (similar). This claim, too, is accordingly premised solely on state law. Next, Count III, Plaintiffs' purported due process claim, relies on alleged violations of Arizona law regarding data retention for electronic voting systems. *See* Compl. ¶¶ 132, 133 (citing to A.R.S. §§ 16-602, 16-608 regarding electronic voting system data retention and asserting that Dominion voting systems violate these rights). The Constitution is not concerned with the minutiae of state electronic voting process data retention requirements. *See, e.g.*, *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020) ("A violation of state law does not . . . transgress against the Constitution."); *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995) ("[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations….").

Plaintiffs' TRO motion only serves to underscore that their issues are truly state law claims masquerading as a federal action. While the motion yet again contains accusations

of unverified and illusory fraud, the only actual concrete violations of anything it alleges are purported violations of *Arizona* law. *See* Dkt. 2 at 2-3. This Court cannot order Defendants to de-certify the election or withhold transmission of certification to the Electoral College based on alleged violations of Arizona law without running afoul of the Eleventh Amendment. *See, e.g.*, *Ohio Republican Party v. Brunner*, 543 F.3d 357, 360-61 (6th Cir. 2008) (holding *Pennhurst* bars claim that Secretary of State violated state election law); *Vulliet v. Oregon*, No. 6:12-CV-492-AA, 2012 WL 4863710, at *6 (D. Or. Oct. 10, 2012), *aff'd*, 701 F. App'x 579 (9th Cir. 2017) (dismissing claims against Oregon Secretary of State and Director of Elections for purported violations of Oregon Constitution under *Pennhurst*).

**D.    Principles of federalism and comity strongly favor abstention.**

Even if the Court were to conclude that each of the above hurdles did not conclusively bar it from exercising jurisdiction, principles of federalism and comity strongly favor that the Court decline to do so. The relief Plaintiffs seek calls for an extraordinary intrusion on state sovereignty by a federal court. Under the *Pullman* abstention doctrine, the claims Plaintiffs raise should be addressed in state court. *See R. Comm'n v. Pullman Co.*, 312 U.S. 496, 501 (1941). *Pullman* recognizes that "federal courts should abstain from decisions when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question," and that abstention in such circumstances "avoid[s] both unnecessary adjudication of federal questions and 'needless friction with state policies . . . .'" *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). The Ninth Circuit looks to three factors to determine whether *Pullman* abstention is appropriate, including (1) whether the case "touch[es] on a sensitive area of social policy upon which federal courts ought not to enter unless no alternative to its adjudication is open," (2) whether it is "plain that the constitutional adjudication can be avoided if a definite ruling on the state issue would terminate the controversy," and (3) whether issue of state law is "uncertain." *Id*. Each factor weighs in favor of abstention here.

-13-

*First*, the conduct of elections is a responsibility uniquely constitutionally entrusted to the states. *See* U.S. Const. art. I ¶ 4. There are few areas where a federal court should tread more lightly. And, as Plaintiffs themselves readily note, the factual claims they raise here could just as readily "support an election contest under Arizona law," Compl. ¶ 15 (citing A.R.S. § 16-672). Moreover, as noted above, the election contest brought by Plaintiff Kelli Ward raises many of the same concerns addressed by Plaintiffs. *See supra* Section II. So it can hardly be claimed that there is no alternative to federal court adjudication.

*Second*, adjudication of the state law issues could avoid constitutional adjudication. Plaintiffs' claims are premised, in part, on local officials violating Arizona election law through (what Plaintiffs claim to be) inadequate signature comparison and subpar electronic data retention. Compl. ¶¶ 46-53. Their TRO motion echoes these state law concerns. Dkt. 2 at 2-3. Plaintiffs also bring a freestanding fraud count, in which they contend that the fraud alleged in their Complaint should lead to the invalidation of ballots under Arizona precedent. *See id.* ¶ 138 (citing *Miller v. Picacho Elementary Sch. Dist. No. 33*, 179 Ariz. 178, 180, 877 P.2d 277, 279 (1994)). If Plaintiffs' own statements regarding Arizona law are to be believed, then the adjudication of the state law issues they raise could avoid federal adjudication here.

*Third*, the issues of state law are "uncertain." It is unclear that the signature matching and data retention practices Plaintiffs complain of violate Arizona law, and it is also uncertain whether Plaintiffs' factual assertions could successfully support an election contest in Arizona. These are questions best suited for a state court, making *Pullman* abstention appropriate here.

**E.    Plaintiffs fail to state a claim on which relief can be granted.**

There is yet another basis upon which the Complaint must be dismissed: it fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Under the Federal Rules, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While Rule 8 "does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me

1   accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

2   555). The shortcomings in the Complaint are particularly stark considering Rule 9(b), which

3   applies to fraud allegations. "In alleging fraud or mistake, a party must state with

4   particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

5        Plaintiffs fail to meet the standards of Rule 8, much less Rule 9(b). Plaintiffs' theory

6   is that Arizona election officials—including the state's Republican governor and "the State

7   of Arizona" as a whole—conspired with domestic and international actors to manipulate

8   election results throughout the state. Compl. ¶ 57. Local elections officials allegedly helped

9   advance a "massive election fraud," *id*. ¶ 1, because they used voting machines made by

10  Dominion, *id.* ¶ 2, which is a company created exclusively to ensure election-rigging so that

11  "Venezuelan dictator Hugo Chavez never lost another election," *id*. ¶ 6, which thereby

12  allowed Iran and China to manipulate the general election to ensure President-elect Biden's

13  victory, *id*. ¶ 13, apparently in cahoots with Arizona elections officials who also supposedly

14  enabled mass voter fraud among mail-in voters, *id.* ¶¶ 54, 57.

15       The Supreme Court has instructed that "[d]etermining whether a complaint states a

16  plausible claim for relief" is "a context-specific task that requires the reviewing court to

17  draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. It would defy

18  experience and common sense to accept Plaintiffs' overarching theory that widespread

19  fraud occurred during the most scrutinized election in modern history, particularly based on

20  the allegations they make in the Complaint. Under federal pleading standards, this Court

21  need not credit Plaintiffs' specious inferences and conclusory allegations. They are, quite

22  simply, not remotely plausible.

23       For these reasons alone, the Complaint should be dismissed. But, in addition to

24  relying on entirely implausible facts, Plaintiffs have failed to state cognizable legal claims.

25  Let us begin with Count II, which Plaintiffs have characterized as a claim brought under the

26  Equal Protection Clause of the U.S. Constitution. Plaintiffs allege that "Defendants[']

27  fail[ure] to comply with the requirements of Arizona law . . . diluted the lawful ballots of

28  Plaintiffs and other Arizona voters . . . ." Compl. ¶ 117. This is not a cognizable equal

1   protection injury. Vote dilution is a viable basis for federal claims only in certain contexts,

2   such as when laws structurally devalue one community's votes over another's. *See, e.g.*,

3   *Bognet*, 2020 WL 6686120, at *11 ("[V]ote dilution under the Equal Protection Clause is

4   concerned with votes being weighed differently."). Courts have repeatedly found the

5   "conceptualization of vote dilution" that Plaintiffs urge here—that is, "state actors counting

6   ballots in violation of state election law," is not a cognizable equal protection violation. *Id.*

7   For good reason: "if dilution of lawfully cast ballots by the 'unlawful' counting of invalidly

8   cast ballots 'were a true equal-protection problem, then it would transform every violation

9   of state election law . . . into a potential federal equal-protection claim.'" *Bognet*, 2020 WL

10  6686120, at *11 (quoting *Boockvar*, 2020 WL 5997680 at *45-46).[4]

11          Plaintiffs have also failed to plead a due process claim. In Count III, Plaintiffs appear

12  to allege that violations of law diluted their votes in violation of the Due Process Clause.

13  *See* Am. Compl. ¶¶ 131–33. But vote dilution is a context-specific theory of constitutional

14  harm premised on the Equal Protection Clause, not the Due Process Clause. And, as set

15  forth above, Plaintiffs have failed to plead a cognizable vote-dilution claim. Even were this

16  Court construed Plaintiffs' allegations as attempting to state a substantive due process

17  claim, the Complaint would still fall short. This is because, "[i]n general, garden variety

18  election irregularities do not violate the Due Process Clause . . . ." *Bennett v. Yoshina*, 140

19  F.3d 1218, 1226 (9th Cir. 1998). Instead, to "strike down an election on substantive due

20  process grounds," two elements must be met: "(1) likely reliance by voters on an established

21  election procedure and/or official pronouncements about what the procedure will be in the

22  coming election; and (2) significant disenfranchisement that results from a change in the

23  election procedures." *Bennett*, 140 F.3d at 1226–27; *see also Curry v. Baker*, 802 F.2d 1302,

24  1315 (11th Cir. 1986) (for the due process clause to be implicated problems must "go well

25

26          [4] Plaintiffs also claim an equal protection violation because Defendants "violate[d]
    Plaintiffs' right to be present and have actual observation and access to the electoral
27  process." [Compl. ¶ 118] Plaintiffs, however, do little to explain this theory and are
    incorrect. "[T]here is no individual constitutional right to serve as a poll watcher."
28  *Boockvar*, 2020 WL 5997680, at *7 (quoting *Pa. Democratic Party v. Boockvar*, 238 A.3d
    345, 385 (Pa. 2020)).

beyond the ordinary dispute over the counting and marking of ballots"). In this case, Plaintiffs' complaints fall far short of a constitutional violation. Plaintiffs do not allege disenfranchisement at all. To the contrary, it is Plaintiffs who seek to negate the votes cast by millions of eligible Arizona voters. Count III therefore does not state a due process claim and must be dismissed.

Plaintiffs' Elections and Electors claims as alleged in Count I of the Complaint are similarly unavailing. The Elections and Electors Clauses vest authority in "the Legislature" of each state to regulate "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives", U.S. Const. art. I, § 4, cl. 1, and to direct the selection of presidential electors, U.S. Const. art. II, § 1, cl. 2, respectively. While far from a model of clarity, Plaintiffs' claim appears to be that Defendants' failure to follow state law resulted in the miscounting of various ballots violated the Elections and Electors Clauses. Compl. ¶¶ 106–09. Plaintiffs, however, fail to tie these allegations to the Electors and Elections Clauses. Indeed, Plaintiffs have not explained how any deviation from election procedures, or anything else, automatically constitutes a violation of these Clauses. Nowhere do they allege that Defendants, or any state law, violates the authority of the Legislature to direct selection of the presidential elections, U.S. Const. art. II, § 1, cl. 2, or regulate elections, U.S. Const. art. I, § 4, cl. 1; *See, e.g.*, *Ariz. State Legislature*, 576 U.S. at 824 (evaluating state law considering the meaning of "the Legislature" as used in the Elections Clause).

**F.     Plaintiffs are not entitled to a temporary or preliminary injunction.**

For the reasons discussed above, Plaintiffs have failed to (and cannot establish) that they are likely to succeed on their claims. As discussed further below, they also have failed to carry their burden on any of the factors necessary to entitle them to preliminary relief, much less the extraordinary, unprecedented, and mandatory relief that they seek. Rather than remedying a constitutional violation, Plaintiffs' requested relief would create one. No court has ever done what Plaintiffs ask this Court to do—throw out the election results, discard more than 3.4 million votes, and ordain the losing candidate the victor by judicial proclamation. As another federal court put it last month when the Trump Campaign sought

an order prohibiting Pennsylvania's officials from certifying election results, "[t]his Court has been unable to find any case in which a plaintiff has sought such a drastic remedy in the contest of an election, in terms of the sheer volume of votes asked to be invalidated." *Boockvar*, 2020 WL 6821992, at *1. America is a democracy. "Voters, not lawyers, choose the President. Ballots, not briefs, decide elections." *Id.* at *9.

### 1.   Plaintiffs have a remedy at law and cannot establish irreparable harm.

As a threshold matter, Plaintiffs concede that they have an adequate remedy at law, *see* Compl. at ¶ 15, and hence are not likely to suffer "irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20; *see also Younger v. Harris*, 401 U.S. 37, 43–44 (1971) (noting the "basic doctrine of equity jurisprudence [provides] that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"). Plaintiffs have an adequate remedy at law here which makes it impossible for them to establish irreparable harm.

As Plaintiffs acknowledge, "the factual basis of this Complaint would also support an election contest under Arizona law since A.R.S. § 16-672 allows for contests on the grounds of misconduct, offenses against the elective franchise, on account of illegal votes, and by reason of erroneous count of votes." Compl. ¶ 15. The availability of this remedy makes their harm, by definition, not irreparable and precludes them from being entitled to injunctive relief. *See*, *e.g.*, *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (stating that, "[t]o satisfy [the irreparable harm] prong of the preliminary injunction test, [the moving party] must show that it is 'likely to suffer irreparable harm,' that is, harm for which there is no adequate remedy at law").

Further, because Plaintiffs have not shown a likelihood of success of the merits of their constitutional claims, Plaintiffs' assertion (Mot. at 9) that they will suffer irreparable harm based on those violations are unfounded. There has been no "deprivation of constitutional rights" and no irreparable injury. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Additionally, "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub.*

*Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also* Wright & Miller, 11A *Federal Practice and Procedure*, § 2948.1 (3d ed., Apr. 2017 update) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."). As discussed above, Plaintiffs' alleged injuries occurred (if they occurred at all), on or before election day. Yet Plaintiffs waited until December 2—nearly four weeks after election day—to file this motion. This Court should consider Plaintiffs' inexcusable delay in determining whether they are now entitled to the "emergency" injunctive relief they seek.

> **2.    The balance of equities and public interest weigh against the issuance of restraining order.**

The balance of equities and public interest cut sharply against granting injunctive relief. Plaintiffs' request that this Court "enjoin Governor Ducey from transmitting the currently certified election results to the Electoral College," Mot. at 11, would wreak havoc on Arizona's elections processes and violate the constitutional rights of millions of Arizonans, all while undermining public confidence and trust in the election's results.

For these reasons, in the past several weeks, courts have rightly refused to issue similar injunctions. *See Boockvar*, 2020 WL 6821992, at *1 (construing Trump Campaign's request to enjoin Pennsylvania's certification of results as a request "to disenfranchise almost seven million voters," and refusing to do so); *Wood v. Raffensperger*, No. 1:20-cv-04561-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020) (denying request to enjoin Georgia from certifying its election results, concluding that "interfer[ing] with the result of an election that has already concluded would be unprecedented and harm the public in countless ways"). This Court should find the same.

## V.    CONCLUSION

For the foregoing reasons, Proposed Intervenor-Defendant respectfully requests that the Court deny Plaintiffs' request for injunctive relief and dismiss Plaintiffs' Complaint.

1    Dated:  December 4, 2020        */s    Alexis E. Danneman*

2                             Alexis E. Danneman (Bar No. 030478)

Sarah R. Gonski (Bar No. 032567)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  (602) 351-8000
Facsimile:   (602) 648-7000
ADanneman@perkinscoie.com
SGonski@perkinscoie.com

Marc E. Elias*
Bruce V. Spiva*
John Devaney*
John M. Geise**
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 600
Washington, D.C. 20005-3960
Telephone:  (202) 654-6200
Facsimile:   (202) 654-6211
MElias@perkinscoie.com
BSpiva@perkinscoie.com
JDevaney@perkinscoie.com
JGeise@perkinscoie.com

Laura Hill*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  (206) 359-3349
Facsimile:   (206) 359-4349
LHill@perkinscoie.com

Roy Herrera (Bar No. 032901)
Daniel A. Arellano (Bar No. 032304)
**BALLARD SPAHR LLP**
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone:  602.798.5400
Facsimile:  602.798.5595
HerreraR@ballardspahr.com
ArellanoD@ballardspahr.com

*Attorneys for ADP*

1                                      **L.R.CIV. 12.1(c) CERTIFICATION**

2         As required by Local Rule 12.1(c), undersigned counsel certifies that before filing

3 this motion, counsel for ADP discussed the issues asserted in this motion with Plaintiffs'

4 counsel, and the parties were unable to agree that Plaintiffs' Complaint was curable in any

5 part by a permissible amendment.

6

7                                      */s Alexis E. Danneman*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**CERTIFICATE OF SERVICE**

3      I hereby certify that on December 4, 2020, I electronically transmitted the attached

4 document to the Clerk's Office using the ECF System for filing and transmittal of a Notice

5 of Electronic Filing to the ECF registrants.

6

7                                  */s Indy Fitzgerald*

8

9 150408008.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28