Exhibit 4

Clerk of the Superior Court
*** Filed ***
12/4/2020 4:05 p.m.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                    12/04/2020


                                    CLERK OF THE COURT
HONORABLE RANDALL H. WARNER              C. Ladden
                                          Deputy


KELLI WARD                          DENNIS I WILENCHIK

v.

CONSTANCE JACKSON, et al.           SARAH R GONSKI


                                    ROOPALI HARDIN DESAI
                                    JOSEPH EUGENE LA RUE
                                    DAVID SPILSBURY
                                    ROY HERRERA
                                    DANIEL A ARELLANO
                                    COURT ADMIN-CIVIL-ARB DESK
                                    DOCKET-CIVIL-CCC
                                    JUDGE WARNER
                                    BRUCE SPIVA
                                    PERKINS COIE LLP
                                    700 THIRTEENTH STREET NW
                                    SUITE 600
                                    WASHINGTON DC  20005


MINUTE ENTRY


East Court Building – Courtroom 414

9:15 a.m. This is the time set for a continued Evidentiary Hearing on Plaintiff's anticipated election contest petition via GoToMeeting.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                                          12/04/2020


    <u>The following parties/counsel are present virtually through GoToMeeting and/or</u>
<u>telephonically:</u>

- Plaintiff Kelli Ward is represented by counsel, John D. Wilenchik.

- Defendants Constance Jackson, Felicia Rotellini, Fred Yamashita, James McLaughlin,
  Jonathan Nez, Luis Alberto Heredia, Ned Norris, Regina Romero, Sandra D. Kennedy,
  Stephen Roe Lewis, and Steve Gallardo (collectively, the "Biden Elector Defendants")
  are represented by counsel, Sarah Gonski, Bruce Spiva (*pro hac vice*), Daniel Arellano,
  and Roy Herrera.

- Intervenors Adrian Fontes (in his official capacity as Maricopa County Recorder) and
  Maricopa County Board of Supervisors (collectively, "County Intervenors") and are
  represented by counsel, Thomas Liddy, Emily Craiger, and Joseph La Rue.

- Intervenor Katie Hobbs (in her official capacity as the Arizona Secretary of State) is
  represented by counsel, Rooplai Desai and Kristen Yost. State Election Director Sambo
  "Bo" Dul is also present.

    Counsel for Biden Elector Defendants addresses the court as to the court's ruling denying
any Rule 50 motion practice after the conclusion of Plaintiff's case. Discussion is held thereon
and counsel for Biden Elector Defendants states his position on the record. The court affirms its
prior ruling denying the request for any Rule 50 motion practice.

    A record of the proceedings is made digitally in lieu of a court reporter.

    Biden Elector Defendants' Case:

    Linton Mohammed is sworn and testifies.

    Biden Elector Defendants' exhibit 16 is received in evidence.

    Linton Mohammed is excused.

    Biden Elector Defendants rest.

    Intervenor Secretary of State's Case:

    Sambo "Bo" Dul is sworn and testifies.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                                    12/04/2020

Intervenor Secretary of State's exhibit 32 is received in evidence.

Sambo "Bo" Dul is excused.

Intervenor Secretary of State rests.

**LET THE RECORD REFLECT** that the court notes its prior acquaintance with County Intervenors' witness, Reynaldo Valenzuela, due to election matters while serving previously as the civil presiding judge.

County Intervenors' Case:

Reynaldo Valenzuela is sworn and testifies.

County Intervenors' exhibit 29 is received in evidence.

10:31 a.m. The court stands at recess.

10:41 a.m. Court reconvenes with the parties and respective counsel present.

A record of the proceedings is made digitally in lieu of a court reporter.

Reynaldo Valenzuela continues to testify.

County Intervenors' exhibit 30 is received on evidence.

Reynaldo Venezuela is excused.

Scott Jarrett is recalled and testifies further.

Scott Jarrett is excused.

County Intervenors rest.

Plaintiff's Rebuttal:

Liesl Emerson is sworn and testifies.

Liesl Emerson is excused.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                          12/04/2020

Plaintiff rests.

11:30 a.m. The court stands at recess.

11:36 a.m. Court reconvenes with the parties and respective counsel present.

A record of the proceedings is made digitally in lieu of a court reporter.

Closing arguments are presented.

Based on the testimony and evidence presented,

**IT IS ORDERED** taking this matter under advisement with a written ruling to be issued as a "**LATER**:" to this minute entry.

Pursuant to the orders entered, and there being no further need to retain the exhibits not offered in evidence in the custody of the Clerk of Court,

**LET THE RECORD FURTHER REFLECT** counsel indicate on the record that the courtroom clerk may dispose of Plaintiff's exhibits 2 through 13 and 15; County Intervenors' exhibit 21; and Intervenor Secretary of State's exhibits 33 and 34 not offered or received in evidence.

12:22 p.m. Matter concludes.

**LATER:**

Based on the evidence presented, the Court makes the following findings, conclusions, and orders. For reasons that follow, the relief requested in the Petition is denied.

1.     **Background.**

On November 30, 2020, Governor Ducey certified the results of Arizona's 2020 general election, and the Biden/Harris ticket was declared the winner of Arizona's 11 electoral votes. The same day, Plaintiff filed this election challenge under A.R.S. § 16-672. In order to permit this matter to be heard and appealed (if necessary) to the Arizona Supreme Court before the Electoral College meets on December 14, 2020, the Court held an accelerated evidentiary hearing on December 3 and 4, 2020.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                              12/04/2020

**2.      The Burden Of Proof In An Election Contest.**

A.R.S. § 16-672 specifies five grounds on which an election may be contested, three of which are alleged here:

> A. Any elector of the state may contest the election of any person declared elected to a state office, or declared nominated to a state office at a primary election, or the declared result of an initiated or referred measure, or a proposal to amend the Constitution of Arizona, or other question or proposal submitted to vote of the people, upon any of the following grounds:
>
> 1. For misconduct on the part of election boards or any members thereof in any of the counties of the state, or on the part of any officer making or participating in a canvass for a state election.
>
> . . .
>
> 4. On account of illegal votes.
>
> 5. That by reason of erroneous count of votes the person declared elected or the initiative or referred measure, or proposal to amend the constitution, or other question or proposal submitted, which has been declared carried, did not in fact receive the highest number of votes for the office or a sufficient number of votes to carry the measure, amendment, question or proposal.

A.R.S. § 16-672(A)(1). Arizona law provides two remedies for a successful election contest. One is setting aside the election. A.R.S. § 16-676(B). The other is to declare the other candidate the winner if "it appears that a person other than the contestee has the highest number of legal votes." A.R.S. § 16-676(C).

The Plaintiff in an election contest has a high burden of proof and the actions of election officials are presumed to be free from fraud and misconduct. *See Hunt v. Campbell*, 19 Ariz. 254, 268, 169 P. 596, 602 (1917) ("the returns of the election officers are prima facie correct and free from the imputation of fraud"); *Moore v. City of Page*, 148 Ariz. 151, 156, 713 P.2d 813, 818 (App. 1986) ("One who contests an election has the burden of proving that if illegal votes were cast the illegal votes were sufficient to change the outcome of the election."). A plaintiff alleging misconduct must prove that the misconduct rose to the level of fraud, or that the result would have been different had proper procedures been used. *Moore*, 148 Ariz. at 159, 713 P.2d

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                              12/04/2020

at 821. "[H]onest mistakes or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not void an election, unless they affect the result, or at least render it uncertain." *Findley v. Sorenson*, 35 Ariz. 265, 269, 276 P. 843, 844 (1929).

These standards derive, in large part, from Arizona's constitutional commitment to separation of powers. Ariz. Const. Art. 3. The State Legislature enacts the statutes that set the rules for conducting elections. The Executive Branch, including the Secretary of State and county election officials, determine how to implement those legislative directives. These decisions are made by balancing policy considerations, including the need to protect against fraud and illegal voting, the need to preserve citizens' legitimate right to vote, public resource considerations, and—in 2020—the need to protect election workers' health. It is not the Court's role to second-guess these decisions. And for the Court to nullify an election that State election officials have declared valid is an extraordinary act to be undertaken only in extraordinary circumstances.

**3.** **The Evidence Does Not Show Fraud Or Misconduct.**

A.R.S. § 16-672(A)(1) permits an election contest "[f]or misconduct on the part of election boards or any members thereof in any of the counties of the state, or on the part of any officer making or participating in a canvass for a state election." Plaintiff alleges misconduct in three respects. First is that insufficient opportunity was given to observe the actions of election officials. The Court previously dismissed that claim as untimely. *See Lubin v. Thomas*, 213 Ariz. 496, 497, 144 P.3d 510, 511 (2006) ("In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice."). The observation procedures for the November general election were materially the same as for the August primary election, and any objection to them should have been brought at a time when any legal deficiencies could have been cured.

Second, Plaintiff alleges that election officials overcounted mail-in ballots by not being sufficiently skeptical in their comparison of signatures on the mail-in envelope/affidavits with signatures on file. Under Arizona law, voters who vote by mail submit their ballot inside an envelope that is also an affidavit signed by the voter. Election officials review all mail-in envelope/affidavits to compare the signature on them with the signature in voter registration records. If the official is "satisfied that the signatures correspond," the unopened envelope is held until the time for counting votes. If not, officials attempt to contact the voter to validate the ballot. A.R.S. § 16-550(A).

This legislatively-prescribed process is elaborated on in the Secretary of State's Election Procedures Manual. The signature comparison is just one part of the verification process. Other

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                                    12/04/2020

safeguards include the fact that mail-in ballots are mailed to the voter's address as listed in voter registration records, and that voters can put their phone number on the envelope/affidavit, which allows election officials to compare that number to the phone number on file from voter registration records or prior ballots.

Maricopa County election officials followed this process faithfully in 2020. Approximately 1.9 million mail-in ballots were cast and, of these, approximately 20,000 were identified that required contacting the voter. Of those, only 587 ultimately could not be validated.

The Court ordered that counsel and their forensic document examiners could review 100 randomly selected envelope/affidavits to do a signature comparison. These were envelope/affidavits as to which election officials had found a signature match, so the ballots were long ago removed and tabulated. Because voter names are on the envelope/affidavits, the Court ordered them sealed. But because the ballots were separated from the envelope/affidavits, there is no way to know how any particular voter voted. The secrecy of their votes was preserved.

Two forensic document examiners testified, one for Plaintiff and one for Defendants. The process forensic document examiners use to testify in court for purposes of criminal guilt or civil liability is much different from the review Arizona election law requires.  A document examiner might take hours on a single signature to be able to provide a professional opinion to the required degree of certainty.

Of the 100 envelope/affidavits reviewed, Plaintiff's forensic document examiner found 6 signatures to be "inconclusive," meaning she could not testify that the signature on the envelope/affidavit matched the signature on file. She found no sign of forgery or simulation as to any of these ballots.

Defendants' expert testified that 11 of the 100 envelopes were inconclusive, mostly because there were insufficient specimens to which to compare them. He too found no sign of forgery or simulation, and found no basis for rejecting any of the signatures.

These ballots were admitted at trial and the Court heard testimony about them and reviewed them. None of them shows an abuse of discretion on the part of the reviewer. Every one of them listed a phone number that matched a phone number already on file, either through voter registration records or from a prior ballot. The evidence does not show that these affidavits are fraudulent, or that someone other than the voter signed them. There is no evidence that the manner in which signatures were reviewed was designed to benefit one candidate or another, or that there was any misconduct, impropriety, or violation of Arizona law with respect to the review of mail-in ballots.

Docket Code 901                          Form V000A                                    Page 7

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                                        12/04/2020


Third, Plaintiff alleges errors in the duplication of ballots. Arizona law requires election officials to duplicate a ballot under a number of circumstances. One is where the voter is overseas and submits a ballot under UOCAVA, the Uniformed And Overseas Citizens Absentee Voting Act. Another is where the ballot is damaged or otherwise cannot be machine-tabulated. When a duplicate is necessary, a bipartisan board creates a duplicate ballot based on the original. A.R.S. § 16-621(A). In 2020, Maricopa County had 27,869 duplicate ballots out of more than 2 million total ballots. The vast majority of these were either mail-in ballots or UOCAVA ballots. 999 of them came from polling places.

The Court ordered that counsel could review 100 duplicate ballots. Maricopa County voluntarily made another 1,526 duplicate ballots available for review. These ballots do not identify the voter so, again, there is no way to know how any individual voter voted. Of the 1,626 ballots reviewed, 9 had an error in the duplication of the vote for president.

Plaintiff called a number of witnesses who observed the duplication process as credentialed election observers. There was credible testimony that they saw errors in which the duplicated ballot did not accurately reflect the voter's apparent intent as reflected on the original ballot. This testimony is corroborated by the review of the 1,626 duplicate ballots in this case, and it confirms both that there were mistakes in the duplication process, and that the mistakes were few. When mistakes were brought to the attention of election workers, they were fixed.

The duplication process prescribed by the Legislature necessarily requires manual action and human judgment, which entail a risk of human error. Despite that, the duplication process for the presidential election was 99.45% accurate. And there is no evidence that the inaccuracies were intentional or part of a fraudulent scheme. They were mistakes. And given both the small number of duplicate ballots and the low error rate, the evidence does not show any impact on the outcome.

The Court finds no misconduct, no fraud, and no effect on the outcome of the election.

4.     __The Evidence Does Not Show Illegal Votes__.

A.R.S. § 16-672(A)(2) permits an election contest "[o]n account of illegal votes." Based on the facts found above, the evidence did not prove illegal votes, much less enough to affect the outcome of the election. As a matter of law, mistakes in the duplication of ballots that do not affect the outcome of the election do not satisfy the burden of proof under Section 16-672(A)(2).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                    12/04/2020

**5.      The Evidence Does Not Show An Erroneous Vote Count.**

A.R.S. § 16-672(A)(5) permits an election contest on the ground that, "by reason of erroneous count of votes" the candidate certified as the winner "did not in fact receive the highest number of votes." Plaintiff has not proven that the Biden/Harris ticket did not receive the highest number of votes.

**6.      Orders.**

Based on the foregoing,

**IT IS ORDERED** denying the relief requested in the Petition.

**IT IS FURTHER ORDERED** denying the request to continue the hearing and permit additional inspection of ballots.

**IT IS FURTHER ORDERED**, as required by A.R.S. § 16-676(B), confirming the election.

**IT IS FURTHER ORDERED** that any request for costs and/or attorneys' fees be filed, and a form of final judgment be lodged, no later than January 5, 2020. If none of these is filed or lodged, the Court will issue a minute entry with Rule 54(c) language dismissing all remaining claims.

The Court finds no just reason for delay and enters this partial final judgment under Ariz. R. Civ. P. 54(b). The Court makes this finding for purposes of permitting an immediate appeal to the Arizona Supreme Court.

/ s / RANDALL H. WARNER

_____
JUDGE OF THE SUPERIOR COURT