Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
Derek C. Flint (#034392)
Ian R. Joyce (#035806)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail: bwjohnson@swlaw.com
          cahler@swlaw.com
          dflint@swlaw.com
          ijoyce@swlaw.com

Anni L. Foster (#023643)
General Counsel
Office of Arizona Governor Douglas A. Ducey
1700 West Washington Street
Phoenix, Arizona 85007
Telephone:  602-542-4331
E-Mail: afoster@az.gov

*Attorneys for Defendant Douglas A. Ducey,*
*Governor of the State of Arizona*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Tyler Bowyer, et al.,

        Plaintiffs,

    v.

Doug Ducey, et al.,

        Defendants,

    and

Maricopa County Board of Supervisors, et al.,

        Intervenor-Defendants

No. 2:20-cv-02321-DJH

**Defendant Governor Ducey's Combined: (a) Motion to Dismiss and (b) Response to Plaintiffs' Motion for TRO and Preliminary Injunction**

Assigned to: Hon. Diane Humetewa

Hearing set: December 8, 2020 at 9:15 a.m.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

**Introduction**

Arizona has strong election laws that prioritize accountability and that clearly lay out procedures for conducting, canvassing, and even contesting the results of an election. It is managed by dedicated and professional election administrators, with support from thousands of volunteer poll workers and poll observers that represent opposing political parties, as mandated by law. *See, e.g.*, A.R.S. §§ 16-531 (appointment of election board); 16-590(C) (appointment of poll observers); 16-615(B) (transporting the official returns envelop); *see also Elections Procedure Manual*, Ariz. Secy. of State, at 86, 96, 105, 133, 157, 178, 184, 197, 203 (2019).[1] Arizona also has clear deadlines that the Governor's Office, in conjunction with the majority of the county recorders (from both parties), argued to the Ninth Circuit needed to be maintained this year, despite COVID-19, in order to ensure the sanctity and security of the election process. *See Mi Familia Vota v. Hobbs*, 977 F.3d 948 (9th Cir. 2020).

With this backdrop, Plaintiffs have brought suit alleging widespread fraud in Arizona's election. In their Complaint, Plaintiffs fail in any way to link Governor Ducey's ministerial duties in the elections process to their voter-fraud theories. The only allegations in the Complaint that even mention Governor Ducey are completely unrelated to Plaintiffs' theories and legal claims. (*See* Doc. 1 at ¶¶ 33-35, 145). Furthermore, Plaintiffs' requests for relief from the Governor are moot because Governor Ducey has already performed his non-discretionary, ministerial acts in connection with this election: observing the final state-wide canvass and transmitting a "certificate of ascertainment" to the National Archivist.

Accordingly, Governor Ducey moves for dismissal of all claims against him with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dismissal is appropriate for several reasons, including that: (1) the relief Plaintiffs seek against the Governor is moot; (2) the Eleventh Amendment bars Plaintiffs' claims against the Governor; (3) Plaintiffs have failed

---

[1] The Secretary of State's Election Procedures Manual has the force of law pursuant to A.R.S. § 16-452 and is available at https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

to allege any facts to support a plausible claim that Governor Ducey violated their constitutional rights or any other law; and (4) Plaintiffs lack Article III standing to sue the Governor. For similar reasons, this Court should also deny Plaintiffs' request for a TRO or preliminary injunction as to Defendant Governor Ducey. (*See* Doc. 28). Plaintiffs will not be harmed by the dismissal of Governor Ducey because the Maricopa County Board of Supervisors—the party that has responsibility related to the conduct of elections, certification of election results and that retains custody of the equipment in question—has intervened in this case. In accordance with L.R. Civ. P 12.1(c), a Notice and Certification of Conferral has been filed contemporaneously with this Motion.

**Background**

The U.S. Constitution provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors" for the Office of the President. U.S. Const. Art. II § 1. The Arizona Legislature has established such procedures. *See* A.R.S. § 16-212. In addition, the Legislature has established a comprehensive election system, based on checks and balances, that is largely organized and conducted by the Secretary of State, independent county boards of supervisors, and other local election officials. *E.g.*, A.R.S. §§ 16-442(A) (requiring the Secretary of State to approve the "types, make, model, or models" of vote tabulating equipment); 16-411(B) (requiring Board of Supervisors to establish polling locations); 16-531(A) (requiring Board of Supervisors to appoint requisite poll workers twenty days before a primary or general election).

After an election for a president, or any other federal, statewide, or legislative office, the county board of supervisors canvass their results and report those results to the Secretary of State. A.R.S §§ 16-642(A); 16-645(B). The Secretary of State must then canvass those county results "[o]n the fourth Monday following" the general election. A.R.S. § 16-648(A). After the completion of the statewide canvass, the Secretary of State issues a "Certification of Election" to each legislative, statewide, and federal candidate who received the highest number of votes for each office. A.R.S. § 16-650. Furthermore, "after the secretary of state issues the statewide canvass containing the results of a presidential election, the presidential

electors of this state shall cast their electoral college votes for the candidate for present…[who] received the highest number of votes in this state…" A.R.S. § 16-212(B).

By statute, the Governor performs two non-discretionary, ministerial tasks in this process. *First*, he (along with the Attorney General and the Chief Justice of the Arizona Supreme Court) is required by state law to be "in the presence of" the Secretary of State when she conducts the official statewide canvass. A.R.S. § 16-648. *Second*, he is required by federal law to send a Certificate of Ascertainment ("Certificate") that identifies the names of Arizona's electoral college electors to the Archivist of the United States. 3 U.S.C. § 6.[2] These statutes do not confer discretion to the Governor.

On November 30, 2020, the Secretary of State conducted the statewide canvass and certified the election in the presence of Governor Ducey. (Ex. A (excerpts from the statewide canvass)). That same day, Governor Ducey transmitted the Certificate to the National Archivist. (Ex. B (copy of the Certificate of Ascertainment)).[3]

## **Argument**

This Court may grant a motion to dismiss under Rule 12(b) where a complaint does not demonstrate that the plaintiff is entitled to relief against a particular defendant. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[2] In addition, for initiated and referred ballot measures (which are not at issue in this case), the Governor must issue a proclamation "declaring the amendments or measures which are approved by a majority of those voting thereon to be law." A.R.S. § 16-651.

[3] Governor Ducey's attendance of the statewide canvass and his issuance of the Certificate are all facts appropriate for judicial notice because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Santa Monica Food Not Bombs v. Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records that "can be accessed at Santa Monica's official website"). Courts may consider judicially noticeable facts in ruling on motions to dismiss. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Additionally, a preliminary injunction[4] "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quotation omitted). A court may only grant a plaintiff this "extraordinary remedy" if it establishes, as to the particular defendant: (1) it is "likely to succeed on the merits" of its claims; (2) it is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of the equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008).

Here, Plaintiffs' claims against Governor Ducey cannot survive the Rule 12(b)(1) or 12(b)(6) standard, let alone satisfy all four *Winter* factors. Even if the factual allegations in the Complaint are accepted as true, their claims against Governor Ducey fail as a matter of law due to: (1) mootness; (2) Eleventh Amendment immunity; (3) an inability to state any plausible claim against Governor Ducey because their Complaint identifies no acts performed by the Governor other than the two ministerial acts described above; and (4) a lack of Article III standing. For these same reasons, Plaintiffs are highly unlikely to succeed on the merits against Governor Ducey, and the Court should deny Plaintiffs' requested preliminary relief as to him.

## I.   Plaintiffs' Claims Against Governor Ducey Are Moot.

Plaintiffs' claims against Governor Ducey are moot because the action they seek to enjoin has already occurred and cannot be undone. A case must be dismissed as moot against a particular defendant when "the issues presented are no longer 'live.'" *L.A. Cty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). In the context of election matters, courts have consistently held that a case is moot when the challenged procedure has already been performed. For example, in *Jones v. Montague*, the plaintiffs sued the Virginia governor and the Secretary of the Commonwealth,

---

[4] The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977).

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

requesting an injunction of an election canvass. 194 U.S. 147, 153 (1904). The Court rejected their challenge, holding that the case was moot because "the thing sought to be prohibited has been done…" *Id.*

Here, after Governor Ducey attended the Secretary of State's statewide canvass and issued the Certificate to the National Archivist (both of which occurred on November 30), his ministerial duties related to the General Election concluded.[5] Plaintiffs unfortunately filed this lawsuit on December 2, 2020—two days *after* Governor Ducey observed the canvass and issued the Certificate—and asked this Court to order Governor Ducey to "de-certify" the election results and enjoin him "from transmitting the currently certified election results to the Electoral College." (Doc. 1 at ¶ 145). Governor Ducey does not have the authority to do either of these things, and Plaintiffs cite no authority otherwise. Because Governor Ducey's statutory duties related to the General Election have already been performed, Plaintiffs' claims against the Governor must be dismissed as moot. *See Montague*, 194 U.S. at 153.

## II.   <u>Plaintiffs' Claims Against Governor Ducey Are Barred by the Eleventh Amendment.</u>

The Eleventh Amendment prevents a state from being sued in federal court without its consent. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). This bar applies "regardless of whether [the suit] seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). The Eleventh Amendment's protections are at their apex where, as here, a plaintiff asks a federal court to "order state actors to comply with state law." *Hale v. Arizona*, 967 F.2d 1356, 1369 (9th Cir. 1992); *see also Pennhurst*, 465 U.S. at 106 (noting that "[i]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

---

[5] The National Archivist has already received and publicly posted the Certificate. *2020 Electoral College Results*, National Archives, https://www.archives.gov/electoral-college/2020 (last visited Dec. 4, 2020).

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

To  avoid the Eleventh Amendment, Plaintiffs here sued the Governor in his official capacity, in an attempt to take advantage of the *Ex Parte Young* exception to the State's sovereign immunity. (Doc. 1). But, in order to use this exception, the state officer "must have some connection with the enforcement of the act." *Ex Parte Young*, 209 U.S. 123, 157 (1908); *see also Pennhurst*, 465 U.S. at 101 (noting that the Eleventh Amendment also "bars a suit against state officials when 'the state is the real, substantial party in interest.'") (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). Here, the Governor has no connection to the factual allegations in the Complaint, much less a connection strong enough to invoke the *Ex Parte Young* exception.

Indeed, while the Complaint makes various allegations about the General Election— including that the vote tabulation machines used in Arizona are susceptible to manipulation or are otherwise deficient, (Doc. 1 at ¶¶ 5-18, 67-102), that there were certain procedural errors related to poll watching and vote counting, (*id.* at ¶¶ 48-62), and that there were irregular voter turnout levels, (*id.* at ¶¶ 63-66)—the Complaint does *not* contain any allegation that the Governor had any involvement in these alleged improprieties or had any authority to oversee, correct, or prevent these issues. Instead, the Complaint only alleges wrongdoing or errors by local county elections officials, poll workers, or the Secretary of State.

Put simply, the Governor's ministerial duties under A.R.S. § 16-648(A) and 3 U.S.C. § 6 do not encompass investigating or rectifying assertions of election irregularities or fraud. And, even if the Governor did have some generalized role in overseeing Arizona elections (he does not), mere "[a]llegations of general oversight of State laws are insufficient to establish the required nexus" under *Ex Parte Young*. *Young v. Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008), *overruled on other grounds by Dist. of Columbia v. Heller*, 554 U.S. 570 (2008); *see also* A.R.S. § 16-142(A)(1) ("The secretary of state or the secretary's designee is [t]he chief state election officer . . ."). As such, Plaintiffs' claims against the Governor must be dismissed.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

III.    **Plaintiffs Fail to Plead any Plausible Claim for Relief Against Governor Ducey under the *Iqbal/Twombly* Pleading Standard.**

The claims against Governor Ducey should also be dismissed because Plaintiffs' Complaint is devoid of any "factual content that allows the court to draw the reasonable inference that the defendant" at issue—Governor Ducey—"is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556, 570. Indeed, the Complaint does not contain *any* specific factual allegations against the Governor. The *only* allegations in the Complaint that specifically reference Governor Ducey are Paragraphs 34 and 35, which simply identify him as a Defendant to this action, and Paragraph 145, which asks this Court to direct an order requiring the Governor to "de-certify" the election (there is no provision in Arizona law that allows this or federal authority that supports this remedy) and an injunction prohibiting him from "transmitting the currently certified election results to the electoral college" (the results have already been "transmit[ed]" to the electoral college).

Given this, the Complaint has failed to make any allegation that would support a reasonable inference that the Governor violated Arizona law, deprived Plaintiffs of their equal protection or due process rights, or violated some other constitutional provision. Because the Complaint fails to state any claim against Governor Ducey that is "plausible on its face," all claims against the Governor should be dismissed. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

IV.    **Plaintiffs Lack Standing to Bring Their Claims Against Governor Ducey.**

Finally, Plaintiffs cannot establish two of the three elements of Article III standing for purposes of their claims against Governor Ducey. To establish standing, Plaintiffs must demonstrate (1) injury in fact; (2) that is "fairly traceable" to the conduct complained of; and (3) that a favorable decision is "likely" to redress the injury-in-fact. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011); *see also Maya*, 658 F.3d at 1067 (motion to dismiss for lack of standing proper under Fed. R. Civ. P. 12(b)(1)). An injury is

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    not fairly traceable to a defendant's conduct when that defendant did not cause the

2    plaintiff's injury. *See Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078,

3    2020 WL 6821992, at *6-7 (M.D. Penn. Nov. 21, 2020).

4         Here, even assuming *arguendo* that Plaintiffs have met the injury-in-fact

5    requirement, they cannot establish that their injury is traceable to Governor Ducey or

6    redressable by any action he could take. With respect to traceability, Plaintiffs do not (and

7    cannot) claim that Governor Ducey played any part in the alleged election fraud that forms

8    the basis of their Complaint. Indeed, Plaintiffs barely mention Governor Ducey's actions at

9    all, claiming only (and erroneously) that he and the Secretary of State "certified" the results

10   of the General Election. (*See* Doc. 1 at ¶ 33). As discussed above, election certification is

11   not one of Governor Ducey's statutory duties. For all these reasons, Plaintiffs cannot

12   establish that their injury is "fairly traceable" to Governor Ducey. *See Barnum*, 633 F.3d at

13   897; *Boockvar*, 2020 WL 6821992, at *6.

14        Plaintiffs also cannot establish that their alleged injury is redressable by Governor

15   Ducey. Plaintiffs ask this Court to order Governor Ducey to "de-certify" the election results

16   and enjoin him "from transmitting the currently certified election results to the Electoral

17   College." (Doc. 1 at ¶ 145). Governor Ducey has already fulfilled his statutory duties related

18   to the General Election by attending the canvass, *see* A.R.S. § 16-648(A), and issuing the

19   Certificate to the Archivist of the United States, *see* 3 U.S.C. § 6. Governor Ducey does not

20   have the power to certify (or de-certify) election results. Tellingly, Plaintiffs do not cite any

21   authority explaining how (or under what authority) Governor Ducey would do take such

22   action. Accordingly, Plaintiffs' claims should be dismissed because they lack Article III

23   standing as to Governor Ducey.[6]

24

25

26   _____
     [6] For the other *Winter* factors that balance the impact of the relief requested against the
27   merits of the claims, Governor Ducey defers to Defendant Secretary Hobbs and Intervenor-
     Defendant Maricopa County Board of Supervisors, since the administration of the general
28   election at the State and local levels are within those parties' purview.

1

## <u>Conclusion</u>

Governor Ducey should be dismissed because the claims against him are moot, barred by the Eleventh Amendment, unsupported by factual allegations, and Plaintiffs lack standing to even bring them against the Governor. These defects are fatal and incurable as to Governor Ducey. Accordingly, Plaintiffs' claims against Governor Ducey should be dismissed with prejudice under Rules 12(b)(1) and 12(b)(6), and their Motion for Temporary Restraining Order and Preliminary Relief should be denied, as to Governor Ducey.

DATED this 4th day of December, 2020.

SNELL & WILMER L.L.P.

By: /s/ Brett W. Johnson
Brett W. Johnson
Colin P. Ahler
Derek C. Flint
Ian R. Joyce
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

Anni L. Foster
OFFICE OF ARIZONA GOVERNOR
DOUGLAS A. DUCEY
1700 West Washington Street
Phoenix, Arizona 85007

*Attorneys for Defendant Douglas A. Ducey, Governor of the State of Arizona*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## CERTIFICATE OF SERVICE

I certify that on December 4, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

s/ Richard Schaan