1   Alexis E. Danneman (Bar No. 030478)
    Sarah R. Gonski (Bar No. 032567)
2   **PERKINS COIE LLP**
    2901 North Central Avenue, Suite 2000
3   Phoenix, Arizona 85012-2788
    Telephone:  (602) 351-8000
4   Facsimile:   (602) 648-7000
    ADanneman@perkinscoie.com
5   SGonski@perkinscoie.com

6   Marc E. Elias*
    Bruce V. Spiva*
7   John Devaney*
    John M. Geise**
8   **PERKINS COIE LLP**
    700 Thirteenth Street NW, Suite 600
9   Washington, D.C. 20005-3960
    Telephone:  (202) 654-6200
10  Facsimile:   (202) 654-6211
    MElias@perkinscoie.com
11  BSpiva@perkinscoie.com
    JDevaney@perkinscoie.com
12  JGeise@perkinscoie.com
    *Admitted Pro Hac Vice
13  **Pro Hac Vice Application Pending
    Additional Counsel Listed on Signature Page
14

15  Attorneys for Proposed-Intervenor Defendant

16

17                   **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF ARIZONA**

18  Bowyer, et al.,

19                   Plaintiffs,                    No. 2:20-cv-02321-DJH

20              v.                                  **PROPOSED INTERVENOR-
                                                    DEFENDANT'S (1) REPLY IN
21  Ducey, et al.,                                  SUPPORT OF MOTION TO
                                                    DISMISS AND (2) OPPOSITION
22                   Defendants.                    TO MOTION TO STRIKE**

23                                                  Expedited Election Matter

24                                                  Hon. Diane J. Humetewa

25

26

27

28

1

## I.     INTRODUCTION

2

3

4

5

6

7

8

Like the best fiction writers, Plaintiffs do not let inconvenient facts get in the way of their narrative. Arizona's election is over, Governor Ducey and Secretary of State Hobbs have signed the Certificate of Ascertainment, and the Certificate has been sent to the Archivist of the United States. There is nothing left for this Court to enjoin, and Plaintiffs never address this fairly elemental issue. In any event, Plaintiffs would have no standing to seek the relief they request. The other flaws in Plaintiffs' claims remain, and their latest filing does nothing to remedy them. This charade must end. This Court should dismiss.

9

## II.     ARGUMENT

10

**A.     Plaintiffs do not have standing.**

11

12

13

Plaintiffs' opposition fails to demonstrate that they have met any of the three elements of standing for their due process and equal protection claims, which include injury in fact, traceability, and redressability. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

14

**1.     None of Plaintiffs' claims are redressable by these Defendants.**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' injuries are not redressable by these Defendants. Plaintiffs make no further argument regarding redressability in their most recent filing. To briefly reiterate, there is no authority for the proposition that a federal court has the power to order Arizona state officials to "de-certify" an election they have already certified, and Plaintiffs' claim to the contrary in their Complaint relies entirely on provisions of Arizona law allowing a state court, following an election contest duly filed in state court and in compliance with state law, to "se[t] aside the election" or hold that a certificate of election "is of no further legal force or effect." A.R.S. § 16-676; *see* Compl. ¶ 16 (stating "the relief sought is in accord with Arizona law" and citing to A.R.S. § 16-676). But the fact that Arizona's legislature has given *Arizona* courts this power following an election contest does not mean that either the Secretary or Governor possess that power, and federal courts cannot order state officials to take an action that they *lack* the ability to do under state law. *See, e.g.*, *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) ("[A] state official cannot be enjoined to act in any way that is beyond his authority to act in the first place.").

1    Plaintiffs' similar request that this Court order an injunction to prevent Governor

2    Ducey "from transmitting the currently certified electoral results [to] the Electoral College"

3    is a factual impossibility. Compl. ¶ 145. The Certificate of Ascertainment has already been

4    transmitted. *See* Nat'l Archives, *2020 Electoral College Results*,

5    https://www.archives.gov/electoral-college/2020 (linking to Arizona's Certificate of

6    Ascertainment, indicating it has already been sent to and received by the Archivist of the

7    United States). Plaintiffs bizarrely claim that 3 U.S.C. § 6 allows the Governor to undo the

8    transmission of this certification, Opp. at 13, but the statute is entirely silent on that point.

9    Plaintiffs' delay has made their requested remedy no longer possible.

10   **2.   None of Plaintiffs' claims are traceable to these Defendants.**

11   Plaintiffs do not offer any argument for the traceability problems readily apparent in

12   their Complaint. As detailed in ADP's Motion to Dismiss, Plaintiffs' claims focus on

13   actions by unnamed nefarious actors and local officials. Dkt. 37 at 8. Neither is traceable to

14   Governor Ducey or Secretary Hobbs. The lack of traceability is a second fatal flaw for

15   Plaintiffs' standing here, and independently requires dismissal. *See Lujan v. Defs. of*

16   *Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring causal connection between injury and

17   defendant's conduct).

18

19   **3.   Plaintiffs do not allege an injury-in-fact for their equal protection and due process claims.**

20   Plaintiffs have failed to establish that they have suffered an injury in fact sufficient

21   to maintain their due process and equal protection claims. First, they claim they were injured

22   by violations of Arizona law. Opp. at 7. This does not provide them standing to bring either

23   of the constitutional claims they assert. *See, e.g.*, *Shipley v. Chi. Bd. of Election Comm'rs*,

24   947 F.3d 1056, 1062 (7th Cir. 2020) ("A violation of state law does not . . . transgress

25   against the Constitution."); *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995) ("[T]he

26   Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation

27   of alleged state law violations….").

28   Second, Plaintiffs assert that their vote-dilution theory is not a generalized grievance

-3-

1   because they have alleged that their votes were diluted in a manner that made their preferred

2   candidate lose. Opp. at 7-8. But this assertion (which, like all of the asserted injuries in their

3   Complaint, is not supported by even a modicum of plausible factual allegations), still does

4   not rescue their standing. All of the cases Plaintiffs cite focus on the prospect of an

5   individual losing their individual opportunity to vote or an organization suffering an

6   organizational injury due to diversion of resources due to such a harm. *See Mi Familia v.*

7   *Hobbs*, No. CV20-01903-PHX-SPL, 2020 WL 5904952, at *2 (D. Az. Oct. 5, 2020)

8   (holding organization had standing to seek injunction against voter registration deadline due

9   to frustration of organizational mission and diversion of resources); *Ariz. Democratic Party*

10  *v. Hobbs*, No. CV-20-01143-PHX-DLR, 2020 WL 5423898, at *5 (D. Az. Sept. 10, 2020)

11  (holding organization had standing to seek injunction against deadline for curing missing

12  signatures under associational theory of standing due to threatened harm to its members);

13  *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1356 (D. Az. 1990)

14  (holding plaintiffs had standing to challenge lack of notice and a hearing prior to their

15  absentee voters being disqualified). Plaintiffs' injury, by contrast, is not about their

16  individual votes, but rather about the fortunes of political parties, and courts have repeatedly

17  held that (for a voter) this is merely a generalized grievance insufficient for Article III

18  standing. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1247 (11th Cir. 2020) ("[A]

19  citizen is not injured by the simple fact that a candidate for whom she votes loses or stands

20  to lose an election."); *Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009) ("Berg's wish that

21  the Democratic primary voters had chosen a different presidential candidate ... do[es] not

22  state a legal harm."); *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 390 (1st Cir. 2000)

23  (holding that a candidate's decreased "chance of being elected" was "hardly a restriction on

24  voters' rights and by itself [was] not a legally cognizable injury sufficient for standing").

25  Plaintiffs bring the paradigmatic case about "group political interests, not individual legal

26  rights," and this cannot demonstrate Article III injury for individuals. *Gill v. Whitford*, 138

27  S. Ct. 1916, 1933 (2018). Losing hurts, but the fact that their preferred candidate lost does

28  not give these voters standing.

**4.     Plaintiffs cannot raise Elections and Electors Clause injuries.**

Plaintiffs also do not have standing under the Electors and Elections Clauses. Plaintiffs' opposition makes no assertion that Plaintiffs have standing under the Elections Clause, focusing solely on standing under the Electors Clause based on non-binding and incorrect authority. Plaintiffs' entire argument is premised on the Eighth Circuit's decision in *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020). Plaintiffs' claim that "the *Carson* court affirmed that Presidential Electors have both Article III and Prudential standing under the Electors and Elections Clauses" misstates the case. Opp. at 5. *Carson* did not address the Elections Clause at all.

As to the Electors Clause, *Carson* is not binding on this Court and was incorrectly decided. The Court in *Bognet v. Sec'y of Commonwealth*, No. 20-2314, 2020 WL 6686120 (3d Cir. Nov. 13, 2020), specifically detailed the *Carson* court's error in rejecting its holding concerning standing, explaining that "[t]he *Carson* court appears to have cited language from [*Bond v. U.S.*, 564 U.S. 211 (2011)] without considering the context—specifically, the Tenth Amendment and the reserved police powers—in which the U.S. Supreme Court employed that language. There is no precedent for expanding *Bond* beyond this context, and the *Carson* court cited none." *Id.* at *8 n.6. This is why multiple other courts to consider the issue have rejected the conclusion embraced in *Carson*, finding correctly that the only entity injured by a violation of the Elections and Electors Clauses is the legislature itself and that, for anyone else, such a claim is simply a generalized grievance. *See, e.g.*, *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (individuals lacked Article III standing to bring claim under the Elections Clause); *Bognet* 2020 WL 6686120, at *6-7 (voters and candidate lacked Article III standing to bring claims under Elections and Electors Clauses); *Hotze v. Hollins*, No. 4:20-cv-03709, 2020 WL 6437668, at *2 (S.D. Tex. Nov. 2, 2020) (holding candidate lacked standing under Elections Clause and concluding that Supreme Court's cases "stand for the proposition that only the state legislature (or a majority of the members thereof) have standing to assert a violation of the Elections Clause").

Even if Plaintiffs did have standing to assert an injury under either clause, they would

1    still be unable to show either traceability or redressability for the reasons described above.

2    *See supra* Sections II.A.1 and II.A.2.

3    **B.      Plaintiffs' claims are barred by laches.**

4    Plaintiffs cannot overcome the doctrine of laches, which plainly bars the relief they

5    seek. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001) (laches bars a claim

6    when plaintiff engaged in unreasonable delay that prejudiced the defendant). Plaintiffs do

7    not dispute that the election was held on November 3, 2020. They do not dispute that

8    Governor Ducey and Secretary Hobbs signed the Certificate of Ascertainment on November

9    30 and then transmitted it to the Archivist of the United States. They do not dispute that

10   they waited until after all these steps had occurred—when it was certain President Trump

11   had lost the election—to bring their lawsuit. And they do not dispute that the relief they

12   seek would deprive all Arizona voters of the right to vote.[1] In the election context, any delay

13   is prejudicial, but a month-long delay in bringing a post-election lawsuit is damning. *See*

14   *Kelly v. Commonwealth*, No. 68 MAP 2020, 2020 WL 7018314, at *1 (Pa. Nov. 28, 2020)

15   ("[I]t is beyond cavil that [Republican] Petitioners failed to act with due diligence in

16   presenting the instant claim" when they waited until November 21 to sue to invalidate

17   Pennsylvania's election); *Kistner v. Simon*, No. A20-1486, slip op. at 3-4 (Minn. Dec. 4,

18   2020) (Dkt. 37-5); *see also, e.g.*, *Ariz. Libertarian Party v. Reagan*, 189 F. Supp. 3d 920,

19   922-23 (D. Ariz. 2016).

20   Plaintiffs' primary arguments against laches are (1) the application of laches is

21   frequently fact-specific, and (2) laches should be invoked cautiously. Neither argument

22   suggests that laches is inappropriate here. First, courts can and do dismiss claims due to

23   laches based on the pleadings or before trial, particularly when it is clear from the face of

24   the complaint that laches applies. *See, e.g.*, *Kelly*, 2020 WL 7018314, at *1; *Kistner*, No.

25   A20-1486, slip op. at 3-4; *see also Aguila Mgmt. LLC v. Int'l Fruit Genetics LLC*, No. CV-

26

27

28   [1] Plaintiffs waived the right to challenge ADP's arguments on prejudice. *See* Opp. at 10 (stating without argument that Defendants have not suffered "genuine prejudice").

1   19-00173-PHX-DJH, 2020 WL 736303, at *3 (D. Ariz. Feb. 13, 2020) (Humetewa, J.)

2   (noting that "[c]ourts in this district have previously applied laches in a motion to dismiss"

3   because "where the elements of laches are apparent on the face of a complaint, it may be

4   asserted on a motion to dismiss" (citation omitted)). Second, even if laches should generally

5   be invoked with "caution[]," Opp. at 9, that does not affect its application here. Plaintiffs

6   try to justify their delay by linking the filing of their lawsuit to the date Arizona certified its

7   election results, November 30. Opp. at 10. But that date is irrelevant because Plaintiffs have

8   brought a constitutional challenge in federal court, not an election contest under state law.

9   Further, Plaintiffs concede that they knew the basis of their claims "during the course of the

10   election." Opp. at 9. That is confirmed by the exhibits to their Complaint, many of which

11   involve events that allegedly occurred on or before Election Day.

12          In short, Plaintiffs unreasonably delayed in bringing suit, and that delay prejudiced

13   the other parties and the public. Laches applies, and the Complaint should be dismissed.

14   **C.      The Eleventh Amendment bars Plaintiffs' claims.**

15          Plaintiffs' response regarding the Eleventh Amendment seems to misunderstand the

16   fundamental problem with their Complaint. It is not enough to escape the Eleventh

17   Amendment that Governor Ducey's actions are more than ministerial or that Plaintiffs ask

18   for prospective relief. *See* Opp. at 13-14. The Eleventh Amendment prohibits federal courts

19   from granting "relief against state officials on the basis of state law, **whether prospective**

20   **or retroactive**." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)

21   (emphasis added); *see also Students of Cal. Sch. for the Blind v. Honig*, 745 F.2d 582, 586

22   (9th Cir. 1984) ("The Supreme Court decided in *Pennhurst*" that the Eleventh Amendment

23   "stands as an absolute bar to actions in federal court alleging that state officials have

24   violated state law"). This is true even when state law claims are styled as federal causes of

25   action. *See, e.g.*, *Massey v. Coon*, No. 87-3768, 1989 WL 884, at *2 (9th Cir. Jan. 3, 1989)

26   (affirming dismissal where "on its face the complaint states a claim under the due process

27   and equal protection clauses of the Constitution, [but] these constitutional claims are

28   entirely based on the failure of defendants to conform to state law"); *Balsam v. Sec'y of*

-7-

1   *State*, 607 F. App'x 177, 183–84 (3d Cir. 2015) (finding Eleventh Amendment bars state

2   law claims even when "premised on violations of the federal Constitution").

3       As detailed in ADP's Motion to Dismiss, none of Plaintiffs' claims escape this bar.

4   *See* Dkt. 37 at 11-13. It most clearly prohibits Plaintiffs' free-standing fraud claim in Count

5   IV, in which Plaintiffs' assert that the fraud alleged in the Complaint should result in the

6   invalidation of ballots based on binding Arizona law. Compl. ¶ 138. But it is also true of

7   Plaintiffs' other claims, each of which, although ostensibly cloaked in the garb of a federal

8   cause of action, ultimately ask the Court to determine that state officials violated state law

9   and compel state officials to do what Plaintiffs believe *Arizona* law requires. Unfortunately

10  for Plaintiffs, the Eleventh Amendment prohibits this Court from issuing any such order.

11  **D.      Principles of federalism and comity strongly favor abstention.**

12      Even if the Court were to conclude that each of the above hurdles did not bar it from

13  exercising jurisdiction, the Court should decline to do so in deference to the state of Arizona.

14  The relief Plaintiffs seek calls for an extraordinary intrusion on state sovereignty by a

15  federal court. Under the *Pullman* abstention doctrine, the claims Plaintiffs raise should be

16  addressed in state court. *See R. Comm'n v. Pullman Co.*, 312 U.S. 496, 501 (1941). As

17  ADP's Motion to Dismiss makes clear, all of the factors the Ninth Circuit looks to determine

18  whether *Pullman* abstention is appropriate are present here. *See* Dkt. 37 at 13-14.

19      Plaintiffs' latest filing offers little argument to the contrary. Instead, Plaintiffs

20  acknowledge that if "the federal constitutional question[s] [are] dependent upon, or may be

21  materially altered by, the determination of an uncertain issue of state law" and "state law is

22  uncertain," abstention may be appropriate. Opp. at 23 (quoting *Harman v. Forssenius*, 380

23  U.S. 528, 534 (1965)). Both are present here. Even putting aside their other arguments,

24  Plaintiffs assert that Arizona law allows for the invalidation of wide swaths of ballots on

25  the basis of purported fraud. Compl. ¶¶ 135-140. This is far from a certain interpretation of

26  Arizona law, but—if Plaintiffs' interpretation of the law is correct—this alone might entitle

27  them to the relief they seek and avoid a court having to reach the purported constitutional

28  questions they raise. In these circumstances, abstention is the proper course.

1   **E.    Plaintiffs do not argue they can survive a motion to dismiss for failure to state
2          a claim.**

3          ADP's motion to dismiss argues that the Complaint fails to state a claim on which

4   relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Plaintiffs do not even try to argue they

5   have stated a plausible claim or respond to ADP's legal arguments. *See Bell Atlantic Corp*

6   *v. Twombly*, 550 U.S. 554, 570 (2007) (plaintiffs must allege "enough facts to state a claim

7   to relief that is plausible on its face"). The closest they come in their opposition are the

8   conclusory assertions that the "Complaint alleges serious violations of Arizona state law,

9   as well as the U.S. Constitution and federal laws, as part of a larger scheme of election fraud

10  that affected the result" and that the Complaint meets "applicable pleading requirements

11  under Arizona law and the Federal Rules of Civil Procedure." Opp. at 24. But wishing a

12  claim exists does not make it so.

13         Plaintiffs appear to confuse federal pleading standards with substantive law. Opp. at

14  23 (suggesting that Federal Rule of Civil Procedure 9(b) does not apply "because it [is not]

15  the standard for ballot fraud" under state law). Federal Rule of Civil Procedure 9(b) requires

16  allegations of fraud or mistake to be stated with particularity in all cases brought in federal

17  court. *See* Fed. R. Civ. P. 9(b). The Complaint mentions fraud, or some variation thereof,

18  six times on the first page alone; Count IV is even titled "Wide-Spread Ballot Fraud." Yet

19  Plaintiffs seem to argue that they do not need to satisfy Rule 9(b)'s specificity requirements

20  because Arizona law invalidates some ballots even in the absence of fraud. Perhaps they are

21  conceding "this is not a fraud case." *Donald J. Trump for President, Inc. v. Pennsylvania*,

22  No. 20-3371, 2020 WL 7012522, at \*1 (3d Cir. Nov. 27, 2020). If so, then it is precisely

23  the type of "post-election contest[] about garden-variety issues of vote counting and

24  misconduct" which federal courts "may not entertain." *Wood v. Raffensperger*, No. 20-

25  14418, slip op. at 2 (11th Cir. Dec. 5, 2020) (Dkt. 41-1). Or perhaps they do not understand

26  the law. In either case, dismissal is warranted.

27  **F.    Plaintiffs' motion to strike should be denied.**

28         Finally, Plaintiffs' late-filed motion to strike should be denied. *See* Dkt. 45. First, as

1   Plaintiffs acknowledge, the Court has not ruled on ADP's motion to intervene. Intervenors

2   are typically required to file proposed pleadings in a timely manner so as not to delay the

3   proceedings or prejudice the other parties. *See* Fed. R. Civ. P. 24(a)-(b); *United States v.*

4   *Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). ADP has done just that. Indeed,

5   Plaintiffs themselves seek expedited review. Opp. at 30-31 (asking the Court to rule on the

6   TRO motion by December 10). Second, the Court did not set page limits specific to

7   intervenors at the hearing or in a written order, and ADP is unaware of any five-page limit.

8   Finally, as ADP noted in a footnote in its motion, it *could* have filed two separate 17-page

9   briefs: one a motion to dismiss, the other an opposition to Plaintiffs' motion for TRO.

10  Instead, it combined those briefs into one shorter filing to help the Court efficiently resolve

11  these proceedings. There was no violation of the local rules.[2]

## III.   CONCLUSION

13      For the foregoing reasons, ADP respectfully requests that the Court dismiss

14  Plaintiffs' Complaint.

---

28  [2] It is also worth noting that Plaintiffs complain about a disregard for page limits right after themselves filing a 31-page brief.

1   Dated:  December 6, 2020                              /s     *Alexis E. Danneman*
                                                          Alexis E. Danneman (Bar No. 030478)
2                                                         Sarah R. Gonski (Bar No. 032567)
                                                          **PERKINS COIE LLP**
3                                                         2901 North Central Avenue, Suite 2000
                                                          Phoenix, Arizona 85012-2788
4                                                         Telephone:  (602) 351-8000
                                                          Facsimile:   (602) 648-7000
5                                                         ADanneman@perkinscoie.com
                                                          SGonski@perkinscoie.com
6
                                                          Marc E. Elias*
7                                                         Bruce V. Spiva*
                                                          John Devaney*
8                                                         John M. Geise**
                                                          **PERKINS COIE LLP**
9                                                         700 Thirteenth Street NW, Suite 600
10                                                        Washington, D.C. 20005-3960
                                                          Telephone:  (202) 654-6200
11                                                        Facsimile:   (202) 654-6211
                                                          MElias@perkinscoie.com
12                                                        BSpiva@perkinscoie.com
                                                          JDevaney@perkinscoie.com
13                                                        JGeise@perkinscoie.com
14
                                                          Laura Hill*
15                                                        **PERKINS COIE LLP**
16                                                        1201 Third Avenue, Suite 4900
                                                          Seattle, WA  98101-3099
17                                                        Telephone:  (206) 359-3349
18                                                        Facsimile:   (206) 359-4349
                                                          LHill@perkinscoie.com
19
                                                          Roy Herrera (Bar No. 032901)
20                                                        Daniel A. Arellano (Bar No. 032304)
21                                                        **BALLARD SPAHR LLP**
                                                          1 East Washington Street, Suite 2300
22                                                        Phoenix, Arizona 85004-2555
                                                          Telephone:  602.798.5400
23                                                        Facsimile:  602.798.5595
24                                                        HerreraR@ballardspahr.com
                                                          ArellanoD@ballardspahr.com
25
26                                                        *Attorneys for ADP*
27
28

-11-

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2020, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.


                              */s  Indy Fitzgerald*

150410054.1

-12-