Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
Derek C. Flint (#034392)
Ian R. Joyce (#035806)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
        cahler@swlaw.com
        dflint@swlaw.com
        ijoyce@swlaw.com

Anni L. Foster (#023643)
General Counsel
Office of Arizona Governor Douglas A. Ducey
1700 West Washington Street
Phoenix, Arizona 85007
Telephone: 602-542-4331
E-Mail: afoster@az.gov

*Attorneys for Defendant Douglas A. Ducey, Governor of the State of Arizona*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Tyler Bowyer, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Doug Ducey, et al.,<br><br>    Defendants,<br><br>  and<br><br>Maricopa County Board of Supervisors, et al.,<br><br>    Intervenor-Defendants | No. 2:20-cv-02321-DJH<br><br>**Reply in Support of Governor Ducey's Motion to Dismiss**<br><br>Assigned to: Hon. Diane Humetewa<br><br>Oral argument set: December 8, 2020 at 9:15 a.m. |

**Introduction**

Plaintiffs have failed to fully address Defendant Governor Douglas A. Ducey's arguments for dismissal of the specific claims against him in their response. (Doc. 43). For instance, Plaintiffs do not respond to Governor Ducey's arguments that (1) they have failed to allege any facts to support a plausible claim that he violated their constitutional rights or any other law; or that (2) they cannot meet the traceability or redressability elements of Article III standing for purposes of their claims against him. Having failed to respond, Plaintiffs have essentially conceded that Governor Ducey should be dismissed from this case. *See* L.R. Civ. 7.1(I).

To the extent Plaintiffs do respond, their rationales for including Governor Ducey as a Defendant are misguided. Plaintiffs appear to raise a new form of relief that was not in the Complaint (which sought to enjoin the issuance of a Certificate of Ascertainment to the National Archivist, even though that non-discretionary ministerial act had already been completed). (*See* Doc. 1 at ¶ 145). Now, Plaintiffs contend that under 3 U.S.C. § 6, Governor Ducey is a necessary party in this litigation in order to send the National Archivist a separate certificate concerning the eventual outcome of this litigation. But, this statute does not save Plaintiffs' claims against Governor Ducey because it was not part of their original Complaint. Moreover, the "capable of repetition, yet evading review" exception to mootness is not applicable here, particularly when Arizona statutes expressly allow for expedited decisions of election contests. *See* A.R.S. § 16-671 *et seq.* Lastly, Plaintiffs fail to distinguish *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-02078, 2020 WL 6821992 (M.D. Penn. Nov. 21, 2020), on any relevant ground. It is settled that Article III standing requires that an alleged injury be "fairly traceable" to a defendant's conduct. (Doc. 38 at 8). *Boockvar*'s references to other forms of standing do not grant Plaintiffs standing to raise claims against Governor Ducey here.

All claims against Governor Ducey should be dismissed with prejudice.[1]

---

[1] Governor Ducey has not requested oral argument on his Motion to Dismiss, and does not object to the Court deciding that Motion on the papers.

- 1 -

**Argument**

I. **Plaintiffs' Claims Against Governor Ducey Are Moot and Not Subject to any Mootness Exception.**

Plaintiffs do not dispute that Governor Ducey has two non-discretionary ministerial roles in Arizona's electoral process (observing the statewide canvass and transmitting a Certificate of Ascertainment to the National Archivist), and that both of these duties have been performed. Plaintiffs raise two arguments against the mootness doctrine, both of which fail. *First*, Plaintiffs cite 3 U.S.C. § 6 for the proposition that the Court can somehow require Governor Ducey to effectively undo the State's transmission of the Certificate to the National Archivist on November 30. (*See* Doc. 44 at 11, 13). More specifically, Plaintiffs note that under 3 U.S.C. § 6:

> if there shall have been any final determination in a State in the manner provided for by law of a controversy or contest concerning the appointment of all or any of the electors of such State, it shall be the duty of the executive of such State, as soon as practicable after such determination, to communicate under the seal of the State to the Archivist of the United States a certificate of such determination . . . .

At the outset, Plaintiffs did not request that Governor Ducey issue a "final determination" certificate in their Complaint or their injunctive request. (*See* Doc. 1 at ¶ 145.) As such, this request is not properly before the Court and cannot be granted. *See Rental Dev. Corp. of Am. v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962).

Moreover, Plaintiffs' reliance on 3 U.S.C. § 6 is misplaced because an order from this Court order does not constitute a "determination" within the meaning of that statute. The statutory text relied on by Plaintiffs instead concerns *state court* election contests decided under state law. That is apparent from the text itself, which discusses a "final determination *in a State in the manner provided for by law* of a controversy or contest concerning the appointment of all or any of the electors *of such State*." (Emphasis added).

The meaning of the phrase "controversy or contest" is further elucidated by 3 U.S.C. § 5, which explains that such matters shall be decided in accordance with *state* law. *See* 3 U.S.C. § 5 ("If any State shall have provided, by laws enacted prior to the day fixed for the

appointment of the electors, for its final determination of any controversy or contest concerning the appointment of all or any of the electors of such State . . . ."). Reading these statutes together, as the Court must, it is apparent that the "determination" of a "controversy or contest" for purposes of 3 U.S.C. § 6 is one made pursuant to *state* law in a *state* forum. *See California v. Trump*, 963 F.3d 926, 947 n.15 (9th Cir. 2020) ("[S]tatutes addressing the same subject matter should be construed *in pari materia*.") (internal quotations omitted). Because 3 U.S.C. § 6 imposes no duty on Governor Ducey to issue another certificate to the National Archivist, Plaintiffs have no live case or controversy claim against him. *See Wood v. Raffensperger*, ---F.3d---, 2020 WL 7094866 (11th Cir. Dec. 5, 2020) (holding that the plaintiffs' claims were moot "[b]ecause Georgia has already certified its results" and because the court "cannot turn back the clock and create a world in which the 2020 election results are not certified") (internal quotations and citations omitted).[2]

*Second*, Plaintiffs argue that this case is not moot because election cases fall within the "capable of repetition, yet evading review" exception. (Doc. 44 at 11-12). But that exception does not apply. A case is only "capable of repetition, yet evading review" when (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. *See Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 187 (1979); *see also Hamamoto v. Ige*, 881 F.3d 719, 723 (9th Cir. 2018) (explaining that the first factor applies when expedited review is unavailable).

---

[2] Even if a federal court order could constitute a "determination" under 3 U.S.C. § 6 (it cannot), that statute only allows Governor Ducey to send an alternative slate of electors in the event that an election outcome is altered after the initial Certificate was sent. *See* Richard D. Friedman, *Trying to Make Peace with Bush v. Gore*, 29 Fla. St. U. L. Rev. 811, 821 (2001) (noting that in 1960 Hawaii sent "two competing slates" to the electoral college because it "first certified the Republican slate as the winners" but later "reversed itself after . . . the completion of a recount ordered by a state court . . . ."). Here, Plaintiffs do not ask the Court for mandamus relief requiring Governor Ducey to send an alternative slate of electors to the National Archivist. Instead, they seek to enjoin him from sending *any* certificate of ascertainment to the National Archivist. (See Doc. 1 at ¶ 145 (requesting an "order enjoining Governor Ducey from transmitting the currently certified election results to the Electoral College"). Indeed, Plaintiffs maintain that if their requested relief is granted, "the question of the choice of electors" will be "revert[ed] to the legislature." (*Id.* at ¶ 17 (emphasis added)).

1   Plaintiffs have not identified how either factor is met here, and the allegations in their
2   Complaint focus on the 2020 General Election. (*See*, *e.g.*, Doc 1 at ¶¶ 1-4, 48-62, 65-66,
3   79, 83, 97-102, 111, 116-23, 139-45); *see also Wood*, 2020 WL 7094866 (holding that the
4   mootness doctrine applied when a plaintiff did not have "a 'reasonable expectation' that he
5   will again seek to delay certification," and that the "possibility of a recurrence is purely
6   theoretical"). Plaintiffs' claims against the Governor should therefore be dismissed because
7   they are moot.[3]

## II. Plaintiffs' Claims Against Governor Ducey are Barred by the Eleventh Amendment.

10   Plaintiffs do not dispute that the Eleventh Amendment bars their claims against
11  Governor Ducey unless Governor Ducey has a requisite *Ex Parte Young* connection to this
12  action. Plaintiffs also do not dispute that Governor Ducey lacks a connection to any of the
13  allegations, speculative or otherwise, made in the Complaint or that he lacked authority to
14  oversee, correct, or prevent these alleged issues. (*See* Doc. 38 at 7). Plaintiffs nevertheless
15  assert that *Ex Parte Young* applies due to the provision in 3 U.S.C. § 6 requiring a state's
16  chief executive to issue a certificate to the National Archivist regarding the determination
17  in a "controversy or contest concerning the appointment of all or any of the electors of such
18  State." (Doc. 44. at 13.) This argument fails for the same reasons described above. Again,
19  the "controversy or contest" referenced in 3 U.S.C § 6 refers to a *state law* election contest
20  in a state forum, such as the type of election challenged authorized by A.R.S. § 16-672(B).
21  Moreover, because Plaintiffs did not raise this issue in their Complaint or provide any other
22  grounds for applying *Ex Parte Young*, all claims against the Governor should be dismissed
23  based on Eleventh Amendment immunity.

---

[3] Plaintiffs argue that their claims are not moot because they have asked for a court order impounding Dominion voting machines. (Doc. 44 at 11). But Plaintiffs do not (and cannot) allege that the impound of Dominion voting machines has anything to do with Governor Ducey. (*See id.*).

- 4 -

### III. **Plaintiffs Fail to Plead any Plausible Claim for Relief Against Governor Ducey under the *Iqbal/Twombly* Pleading Standard.**

Plaintiffs did not respond to Governor Ducey's argument that he should "be dismissed because Plaintiffs' Complaint is devoid of any 'factual content that allows the court to draw the reasonable inference that the defendant' at issue—Governor Ducey—'is liable for the misconduct alleged.'" (Doc. 38 at 7 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a party fails to respond to an argument in a motion to dismiss, a district court "may dispose of the motion summarily." *See* L.R. Civ. 7.2(I); *see also Owner-Operator Independent Drivers Assoc., Inc. v. Swift Transp. Co., Inc.*, No. CV 02-1059-PHX-PGR, 2004 WL 5376210, at *5 (D. Ariz. July 28, 2004) (a party's "failure in its response to set forth any argument in opposition to such a dismissal to be a consent on its part to the requested dismissal").

In addition, Plaintiffs' response to the arguments made by other Defendants confirms they have no plausible claim for relief against Governor Ducey. Plaintiffs assert that the crux of their Complaint is alleged "systematic violations of procedural safeguards designed to prevent 'fraud' and 'ballot tampering.'". (Doc. 44 at 24). At no point, however, do Plaintiffs suggest that Governor Ducey has any involvement in these alleged systemic issues in election administration. Indeed, the Complaint does not contain any specific factual allegations against him at all. (*See* Doc. 38 at 7). Thus, all that remains is Governor Ducey's non-discretionary ministerial role (along with the Arizona Attorney General, who is not named as a Defendant) in observing the certification of the official statewide canvass and transmitting the names of Arizona's electoral college electors to the National Archivist. *See* A.R.S. § 16-648; 3 U.S.C § 6. That alone cannot be sufficient to state a plausible claim against Governor Ducey for violations of equal protection or due process rights or any other law.

## IV. **Plaintiffs' Lack Standing to Bring Claims Against Governor Ducey Because They Cannot Show that Their Alleged Injuries Are Traceable to, or Redressable by, the Governor.**

As stated above, Plaintiffs do not address Governor Ducey's argument that their alleged injuries are not traceable to or redressable by him. Instead, they attempt (in a footnote) to distinguish one of the cases cited regarding standing—*Donald J. Trump for President, Inc. v. Boockvar*, ---F. Supp. 3d---, 2020 WL 6821992 (M.D. Penn. Nov. 21, 2020)—on the ground that *Boockvar* addressed certain standing theories "that are not present here." (Doc. 44 at 7 n.6). This argument misses the point. *Boockvar* is relevant here because, as in that case, Plaintiffs' injuries are neither traceable to nor redressable by the government official they sued. (Doc. 38 at 9); *see Boockvar*, 2020 WL 6821992, at *6-7. Critically, Plaintiffs do not explain how they meet either of these standing elements. Governor Ducey did not, under any factual scenario, "actually cause[] their [alleged] injuries" related to systemic election fraud and cannot redress those alleged injuries. *See Boockvar*, 2020 WL 6821992, at *6-7; *see also Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 897 (9th Cir. 2011). Because Plaintiffs are unable to explain how their claims against Governor Ducey satisfy two fundamental elements of standing, the Court should dismiss their claims against him. *See* L.R. Civ. 7.2(I).

### **Conclusion**

Plaintiffs' claims against Governor Ducey should be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because those claims are moot, barred by the Eleventh Amendment, unsupported by factual allegations, and Plaintiffs lack standing to bring them against Governor Ducey.

DATED this 6th day of December, 2020.

                SNELL & WILMER L.L.P.

By: /s/ Brett W. Johnson
    Brett W. Johnson
    Colin P. Ahler
    Derek C. Flint
    Ian R. Joyce
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona 85004-2202

    Anni L. Foster
    OFFICE OF ARIZONA GOVERNOR
    DOUGLAS A. DUCEY
    1700 West Washington Street
    Phoenix, Arizona 85007

    *Attorneys for Defendant Douglas A. Ducey, Governor of the State of Arizona*

## **CERTIFICATE OF SERVICE**

I certify that on December 6, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

s/ Tracy Hobbs