# EXHIBIT A

Clerk of the Superior Court
*** Filed ***

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

11/30/2020 2:50 PM

CV 2020-014562                                     11/29/2020

CLERK OF THE COURT
HONORABLE MARGARET R. MAHONEY              K. Ballard
                                          Deputy

LAURIE AGUILERA, et al.                   ALEXANDER M KOLODIN

v.

ADRIAN FONTES, et al.                     THOMAS PURCELL LIDDY

                                          DANIEL A ARELLANO
                                          SARAH R GONSKI
                                          COURT ADMIN-CIVIL-ARB DESK
                                          DOCKET-CIVIL-CCC
                                          JUDGE MAHONEY

CASE DISMISSED

"There's nothing perfect in this world, including voting systems."

So testified Plaintiffs' voting systems expert Dr. Sneeringer[1] during the Hearing[2] in response to the question "To your knowledge, does a perfect voting system exist?" Dr.

---

[1] W. James Sneeringer received his B.S. in Mathematics from Duke University, and his Ph.D. in Computer Science from University of North Carolina at Chapel Hill. He testified to having 20 years of experience examining voting systems for the state of Texas. (Hearing Exh. "32".) Over those years, Dr. Sneeringer conducted 60 to 70 examinations of 10 different voting systems, although he never examined either Maricopa County's actual voting system, or the Dominion Voting Systems, Democracy Suite 5.5-B, which Maricopa County uses in its elections. Dr. Sneeringer testified that in the course of conducting those 60 to 70 voting systems examinations, he had never come across a perfect voting system.
[2] On 11/20/2020, from approximately 9:00 AM to 5:00 PM, by agreement of the parties, this Court held a proceeding (the "Hearing") which combined (1) the evidentiary hearing on Plaintiffs' Complaint; and (2) oral argument on two Motions to Dismiss, one filed by the Maricopa County Defendants (collectively, "Defendants") and the other filed by Intervenor Arizona Democratic Party ("Intervenor" or "ADP").

Docket Code 042                     Form V000A                          Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                             11/29/2020

Sneeringer's opinion, while seemingly neither controversial nor original as to the lack of perfection in the world, directly contradicts the linchpin of Plaintiffs' Complaint[3].

Plaintiffs' Complaint, stating six causes of action, contains a modest 13.5 pages of explanatory text. Within those pages, Plaintiffs assert 13 separate times that Arizona law requires and guarantees to its voters perfection in the voting process in this State, and that Plaintiffs were harmed as a legal matter by being deprived of a perfect process.

Specifically, Plaintiffs claim:
- the ballot casting and tabulating process did not occur with "perfect accuracy";
- the tabulation machines did not "both automatically and perfectly read and record" all ballots and did not count votes "perfectly";
- every tabulator was not a "perfectly accurate machine"; and
- all votes were not "counted via a fully automated and perfect process."

(Complaint at 2:8, 4:28, 6:15, 7:6, 7:21, 7:28, 8:18-19, 8:21, 9:9, 11:23-24, 11:25-26, 12:2, and 12:23-24.)

**THE COURT FINDS** the law cannot provide, nor does it guarantee, perfection.

This Court could not locate the word "perfect," or a derivative thereof, in the Arizona Secretary of State's 2019 Elections Procedures Manual ("EPM") (Hearing Exh.[4] "23"). Likewise, the Court is not aware of, and no party has brought to the Court's attention, any Arizona elections or voting statute containing the word "perfect" or a variation thereof.

The Complaint states that it is brought by "two individuals who experienced difficulties voting on election day." (Complaint ¶ 1.1.)

---

[3] Plaintiffs Laurie Aguilera ("Aguilera") and Donovan Drobina ("Drobina") (collectively, "Plaintiffs") filed a Verified Complaint ("Complaint") on 11/12/2020. Although the Complaint is required to be verified, only Aguilera verified the Complaint; Drobina did not. Aguilera explicitly limits her Verification as follows: "My knowledge of course being limited to the facts of my particular circumstances." (*Id.,* second sentence.) Aguilera's particular circumstances are not the same circumstances Drobina experienced. In addition, Drobina's Declaration (Exh. "D" to Complaint) does not verify the Complaint, and was dated 11/4/2020 which date is well before 11/12/2020 when the Complaint herein was both dated and filed, but 11/4/2020 is consistent with the date these Plaintiffs filed an earlier Complaint in CV2020-014083 ("*Aguilera I*"). Further, in the final paragraph of both of Drobina's Declarations (attached to Plaintiffs' Amended Complaint in *Aguilera I* and Exh. "D" to the Complaint herein), Drobina states expressly that "Kolodin Law Group PLLC is not my attorney," yet Kolodin Law Group PLLC appears in the Complaint herein as counsel representing Drobina and likewise Kolodin Law Group PLLC has appeared on Drobina's behalf at all proceedings throughout the entirety of both this matter and *Aguilera I.*

[4] Unless otherwise noted, all exhibits referenced hereinafter are to exhibits received in evidence during the Hearing.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                          11/29/2020

Plaintiff Aguilera asserts that she was unable to successfully cast her ballot in person at the polls on 11/3/2020, Election Day. (*Id.* ¶ 1.2.) Aguilera testified[5] that on Election Day, she and her husband Damian Aguilera went together to vote in person at the Sheraton Hotel at 26th Avenue and Dunlap in Phoenix. Aguilera's husband testified that he voted without incident just ahead of his wife. Aguilera testified that when she inserted her completed ballot into the tabulator machine, the tabulator screen did not light up or make any noise. Poll workers who came to assist Aguilera thought the tabulator looked as though it was ready to receive another ballot and told Aguilera she needed to vote again. When Aguilera began the process of doing so by scanning in her identification at the check-in kiosk, the kiosk indicated that she had already cast her ballot and gave her the option to cancel the ballot.

Aguilera elected to do so, but before she could proceed further, a poll worker returned and told Aguilera and the other poll worker attending Aguilera: "I just got off the phone. Her ballot's in the box. It will be counted tonight." Consequently, Aguilera was not permitted to cast a second ballot as her first ballot "was in the box" and would be counted later.

Aguilera's husband later checked the Maricopa County Recorder's website for his ballot status which, under the heading "My Ballot Status," showed a message reading "11/3/2020. You voted on Election Day. Your vote was counted." (Exh. "2".) Aguilera checked her ballot status on the website and the section under "My Ballot Status" was blank. (*Id.*) When asked what date she checked the website and took the screenshot that is Exhibit "2," Aguilera testified "I don't remember the date. A couple of weeks maybe. A week – I don't know. A couple of weeks ago." She had not checked the website on the day of the Hearing.

Aguilera is concerned that perhaps her ballot in fact was not processed and counted, contrary to what the poll workers told her would happen. Further, Aguilera also testified that even if her ballot was in fact counted, but was counted by a human being rather than a machine, she would not be satisfied because she has "no way of verifying that."

Plaintiff Drobina described a different scenario. Drobina acknowledges that he cast his ballot in person at the polls on Election Day at Arrowhead Town Center in Glendale, but the "tabulation machine ['tabulator'] was unable to automatically read and tabulate his ballot with perfect accuracy as the law required." (*Id.* ¶ 1.3.) The tabulator did not automatically accept Drobina's completed ballot the first two times he inserted it into the tabulator and therefore, he deposited his completed ballot into Tray 3 of the tabulator. Ballots from Tray 3[6] are processed later

---

[5] No poll worker or other witness testified to any of the details relating to Aguilera's or Drobina's specific experiences on Election Day, such that the descriptions provided of same are all from Plaintiffs' memories alone.

[6] Witness Scott Jarrett, Director of Election Day and Emergency Voting for the Maricopa County Election Department, referred to "misread ballots" as ballots that a tabulator would not accept, in which case the tabulator would feed the

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                    11/29/2020

and if further attempts at a tabulator reading a ballot are unsuccessful, then a human being manually reviews the ballot to determine voter intent and count the ballot ("Adjudication"). Drobina objects to a human review of his ballot as inferior to a machine review.

Drobina acknowledges that he did in fact receive confirmation on the County Recorder's website that his ballot had been counted. (Exh. "3".)

The evidence established that any number of issues may cause a tabulator to not be able to read a ballot, including stray marks, overvotes[7], blanks, unclear marks, tears, wrinkles, stains, or other damage. (*E.g.,* Exhs. "51" and "24".)  If this occurs, the voter is given the option to "spoil[8]" her ballot and cast a new ballot, or she may decline to spoil her ballot and choose instead to let the original ballot go forward as is. (Exh. "51".)

Drobina complains that he prefers that a tabulator machine, rather than a human, reads his ballot and he asserts that Arizona law requires that to happen as Arizona uses tabulator machines. There is no contention that a human reviewing a ballot would ever know *who* cast the ballot as the parties all agree that a ballot contains no information as to the voter's identity, consistent with Arizona law requiring that ballots be secret. A.R.S. § 16-446(B)(1). Consequently, once a ballot has been cast, given the absence of any voter identification information on a ballot, the ballot cannot be "married" to, or tied back to, a specific voter. No party disputes this fact which the evidence established fully. Thus, it is physically impossible to locate, for any purpose, the ballots that were cast by Aguilera and Drobina on 11/3/2020.

In the normal course, Arizona law provides for ballots that cannot be read by tabulators for various reasons to be "adjudicated" by humans. An alternative to such human involvement is of course that a ballot which the machine cannot read will simply not be counted. That result disadvantages everyone, primarily the disenfranchised voter, but also the electorate, the candidates on the ballot, and the election process. Plaintiffs assert however that "[h]uman beings are by nature fallible and imperfect" (Complaint ¶ 4.14) and therefore inferior to machines, which Plaintiffs assert are infallible and "perfectly accurate."

**THE COURT FURTHER FINDS** no evidence established that machines are infallible or perfectly accurate. In fact, Plaintiffs' assertions in this respect are starkly disproven by the very events that bring Plaintiffs to this Court, i.e., Plaintiffs' claims that the ballots they completed and cast could not be read by the tabulator machines into which Plaintiffs inserted their completed ballots. Either Plaintiffs marked or handled their ballots in a manner that caused the tabulators to

---

ballot back out of the machine to the voter. The voter then could opt to spoil his ballot or have it fed into Drawer 3, also referred to as the "misread bin" by witness Joshua Banko, a former Elections Department clerk.

[7] An "overvote" results when a voter marks more votes than allowed. (Exh. "51".)

[8] A "spoiled" ballot is one a voter chooses not to have counted. (Exh. "51".)

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                                11/29/2020

not be able to read them, or the tabulators experienced some problem that interfered with the machines' ability to do so. It is after all the fallible and imperfect humans who complete ballots, providing opportunity for the voter him or herself to cause inadvertently the very situation that prevents the ballot from being readable by the machine[9]. Similarly, it is not genuinely debatable that machines at times can and do malfunction, break down, and experience problems operating as designed and expected. In sum, Plaintiffs' underlying, explicitly asserted premise that voting machines are, or are required by law to be, always perfectly accurate is simply not credible, reasonable or provable.

**THE COURT FURTHER FINDS** Plaintiffs' failure to establish the core premise of their Complaint – that machines are always infallible and perfect, and that the law requires same – defeats Plaintiffs' claim that they were deprived of a perfect process when the tabulators could not read their ballots automatically and with perfect accuracy. A flawless election process is not a legal entitlement under any statute, EPM rule, or other authority identified by the parties or otherwise known to the Court. Rather, a perfect process is an illusion.

Plaintiffs' first sentence of their Complaint states "Plaintiffs are two individuals who experienced difficulties voting on election day." Plaintiffs thereafter contradict themselves in footnote 1 on page 8 ("Footnote 1") which reads "References to plaintiffs should also be taken to refer to those Maricopa County voters who experienced similar issues." In *Aguilera I*, Plaintiffs Aguilera and Drobina indicated an intention to certify a class of voters purportedly harmed by using Sharpie markers on their ballots and to proceed with that matter as a class action. No such certification occurred as Plaintiffs voluntarily and shortly dismissed *Aguilera I.* In this matter, class certification has not been requested. Therefore, in this cause, contrary to Footnote 1, no evidence or claims are properly before the Court concerning possible grievances of any unidentified voters.

Perhaps related to Footnote 1, Plaintiffs called as a Hearing witness Joshua Banko ("Banko"), a former Elections Department clerk who worked on Election Day at the polling location at the Paradise Valley Mall, Entrance 4, in Phoenix. The crux of Banko's testimony was that during the voting at the Paradise Valley Mall on Election Day, he observed issues with the two tabulator machines used at that site accepting ballots from "approximately 80%" of the voters at that location.

**THE COURT FURTHER FINDS** Banko's testimony unhelpful to the issues before the Court for two primary reasons.

---

[9] Plaintiffs both testified that they completed their respective ballots perfectly, dismissing the possibility that anything they may have done or not done to their ballots caused the problems they experienced. **THE COURT FINDS** such uncorroborated testimony unpersuasive as both wholly conclusory and self-serving.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                                11/29/2020

First, the two specific tabulator machines that Banko testified had issues were not the same tabulators either Aguilera or Drobina used because Banko, Aguilera and Drobina were at three different polling sites on Election Day, each of which location had its own separate tabulator machines.

Second, Banko's description of what he saw and how clearly he could see the marks on various ballots of voters was unreliable. During Election Day, Banko's various assignments included manning the drop box for early voting ballots, acting as a registration clerk, and handling the on-demand ballot printers. Banko contends that he could see, often from a distance, that there were no extraneous votes or lines on the ballots and that the bubbles seemed to be filled in completely and appropriately by the voters who nevertheless were having issues. Banko also assumed he knew which portions of the voters' ballots allowed one or more votes because he himself lived "in proximity" to this polling location and many of the voters' residences were also "in proximity" to this site. While acknowledging that he was "obviously doing other tasks," Banko thinks he got a "good look" at 10 ballots and "a look" at another 15 ballots at least, while he was stationed throughout the polling site. Banko testified that voters having issues were showing their ballots to the Marshall or the Inspector, whose jobs involved addressing such issues. It was not Banko's job to examine the ballot of a voter with an issue. Despite Banko's limited exposure to the voters' ballots, Banko testified that all of "[t]he ballots were in pristine condition."

**THE COURT FURTHER FINDS** no probative value to Banko's testimony which was unspecific, categorical, appeared largely speculative and untrustworthy, and was not material to the voting experiences Aguilera and Drobina had at their separate voting locations.

**THE COURT FURTHER FINDS** to the extent Banko's testimony was intended to show that the tabulators at one site, different from the polling locations where Plaintiffs voted, experienced problems on Election Day, such evidence directly undercuts Plaintiffs' claims that voting machines are reliably perfect. In addition, the uncontroverted Certificates of Accuracy (Exhs. "45" and "46") verified that successful Logic and Accuracy Tests of the 2020 General Election Combined Voting Equipment were conducted in Phoenix on 10/6/2020, in accordance with A.R.S. § 16-449, and post-election on 11/18/2020.

**A.R.S. § 16-446,** *Specifications of electronic voting system,* provides in pertinent part:

**A.** An electronic voting system consisting of a voting or marking device in combination with vote tabulating equipment shall provide facilities for voting for candidates at both primary and general elections.
**B.** An electronic voting system shall:
1. **Provide for voting in secrecy** when used with voting booths.

Docket Code 042                     Form V000A                          Page 6

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                        11/29/2020

2. Permit each elector to vote at any election for any person for any office whether
or not nominated as a candidate, to vote for as many persons for an office as the
elector is entitled to vote for and to vote for or against any question on which the
elector is entitled to vote, **and the vote tabulating equipment shall reject choices
recorded on the elector's ballot if the number of choices exceeds the number
that the elector is entitled to vote for the office or on the measure.**
3. **Prevent the elector from voting for the same person more than once for the
same office.**
4. Be suitably designed for the purpose used and be of durable construction, and
**may be used** safely, efficiently and **accurately in the conduct of elections and
counting ballots.**
5. **Be provided with means for sealing the voting or marking device against
any further voting after the close of the polls and the last voter has voted.**
6. **When properly operated, record correctly and count accurately every vote
cast.**
7. **Provide a durable paper document that visually indicates the voter's
selections, that the voter may use to verify the voter's choices, that may be
spoiled by the voter if it fails to reflect the voter's choices and that permits the
voter to cast a new ballot. This paper document shall be used in manual audits
and recounts.**
(Emphasis added.)

As to relief requested, Aguilera requests to be able "to cast a new ballot." (Complaint at
12:10-11.) Such relief is not legally available to Aguilera. Aguilera cast one ballot and cannot
lawfully cast another. In addition, once the polls have closed on Election Day, further voting is
prohibited. A.R.S. § 16-446(B)(5).

Plaintiffs both seek as part of their requested relief the opportunity to attend the
tabulation/adjudication process in person to watch it live and up close now and possibly in the
future. Plaintiffs seek an injunction that "require[es] the opening [of] the location where electronic
adjudication is taking place to the public in further elections, as well as during any additional
electronic adjudication that takes place this election (e.g., as a result of a recount)." (Complaint at
15:4-7.) Plaintiffs contend that the Electronic Adjudication Addendum to the 2019 EPM[10] (Exh.
"24") at § (D), entitled *Electronic Vote Adjudication Procedures,* justifies such an Injunction
where it states "1. The electronic adjudication of votes must be performed in a secure location,
preferably in the same location as the EMS[11] system, but **open to public viewing.**" (Complaint ¶

---

[10] As agreed by all parties, the EPM has the force of law. A.R.S. § 16-452(C); *Arizona Public Integrity Alliance v.
Fontes,* 2020 WL 6495694 (Ariz. Nov. 5, 2020 ¶ 16).
[11] "EMS" is the election management system.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                              11/29/2020

4.42, emphasis added.)  Specifically, Plaintiffs assert that "Defendants failed to open the location where electronic adjudication occurs to the public." (Complaint, ¶ 4.43.)

**THE COURT FURTHER FINDS** the relief requested is not appropriate or feasible for several reasons. First, the adjudication of votes had been completed by or on the date of the Hearing. Second, the uncontested evidence established that the public is able to view the adjudication process on an Elections Department website which broadcasts to the public these very Election Department activities, yet both Plaintiffs testified that they had not even looked at the website. Although Plaintiffs' counsel argued that the website's camera view was distant or in some fashion inadequate to satisfy Plaintiffs, this was argument of counsel since Plaintiffs had never actually availed themselves of the website viewing opportunity to know personally what was visible or whether it was satisfactory.

Third, the Court questions a process which permits anyone other than the authorized personnel hired/appointed to do so, to view a ballot in the fine detail Plaintiffs desire. Disclosing the details of another voter's ballot to a member of the public offends ballot secrecy. If Aguilera or Drobina had asked to watch closely in some manner the adjudication or processing of *her or his own ballot*, secrecy would not be an issue. However, because, as all parties agree, it is impossible to associate a ballot, once cast, with any specific voter, neither Plaintiff could have watched her/his own ballot being processed or adjudicated. Furthermore, **THE COURT FINDS** Plaintiffs did not establish that the public website fails to satisfy the Electronic Adjudication Addendum § (D)(1) requirement that adjudication be "open to public viewing".

In the Motions to Dismiss, Defendants and Intervenor contend that the Complaint should be dismissed under the doctrine of laches. The Court disagrees.

The defense of laches is available in election challenges. *Harris v. Purcell,* 193 Ariz. 409, 412, 973 P.2d 1166, 1169 (1998); *Mathieu v. Mahoney,* 174 Ariz. 456, 458-59, 851 P.2d 81, 83–84 (1993). This doctrine is an equitable counterpart to the statute of limitations, designed to discourage dilatory conduct. *Harris,* 193 Ariz. at 410 n. 2, 973 P.2d at 1167 n. 2. Laches will generally bar a claim when the delay is unreasonable and results in prejudice to the opposing party. *Id.* at 412, 973 P.2d at 1169. … A laches defense, however, cannot stand on unreasonable conduct alone. *Harris,* 193 Ariz. at 412, 973 P.2d at 1169. A showing of prejudice is also required. *Id.; Mathieu,* 174 Ariz. at 459, 851 P.2d at 84. … The real prejudice caused by delay in election cases is to the quality of decision making in matters of great public importance. *Mathieu,* 174 Ariz. at 460, 851 P.2d at 85. The effects of such delay extend far beyond the interests of the parties. Waiting until the last minute to file an election challenge "places the court in a position of having to steamroll through the delicate legal issues in order to meet the deadline for measures to be placed on

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                                    11/29/2020

the ballot." *Id.* at 459, 851 P.2d at 84 (citation omitted). We repeat our caution that litigants and lawyers in election cases "must be keenly aware of the need to bring such cases with all deliberate speed or else the quality of judicial decision making is seriously compromised." *Id.* at 460, 851 P.2d at 85. Late filings "deprive judges of the ability to fairly and reasonably process and consider the issues ... and rush appellate review, leaving little time for reflection and wise decision making." *Id.* at 461, 851 P.2d at 86. It is imperative that we consider fairness not only to those who challenge a ballot initiative, but also to the sponsors who place a measure on the ballot, the citizens who sign petitions, the election officials, and the voters of Arizona. *Harris,* 193 Ariz. at 414, 973 P.2d at 1171.

*Sotomayor v. Burns,* 199 Ariz. 81, 82-83 ¶¶ 6, 8 and 9 (2000).

**THE COURT FURTHER FINDS** under the circumstances presented that although Plaintiffs could have proceeded more expeditiously, substantial prejudice is not shown and the Court therefore proceeds on the merits[12].

"To gain standing to bring an action, a plaintiff must allege a distinct and palpable injury. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). An allegation of generalized harm that is shared alike by all or a large class of citizens generally is not sufficient to confer standing. *Id.* at 499, 95 S.Ct. at 2205." *Sears v. Hull,* 192 Ariz. 65, 69 ¶ 16 (1998).

**THE COURT FURTHER FINDS** Plaintiffs fail to allege harm of the nature required to achieve standing. Plaintiffs both cast their ballots. Plaintiffs both allege that they would prefer the process to be different. A change in the established process goes to the process used with and available to all voters, not uniquely to Aguilera and Drobina.

Recognizing federal law as instructive, the Court in *Arizonans for Second Chances, Rehab., and Pub. Safety v. Hobbs,* 249 Ariz. 396, 471 P.3d 607, 616 ¶ 22 (2020), analyzed redressability, noting that "a party must show that their requested relief would alleviate their alleged injury." (*Id.* ¶ 25, *citing Bennett v. Napolitano,* 206 Ariz. 520, 525 ¶ 18 (2003).)

For the reasons discussed above, the relief sought by Plaintiffs would not alleviate their alleged injuries in how their ballots were processed and handled. That fully complete process is a locked box, in effect. It is impossible to open the box, to identify or locate Plaintiffs' ballots, to review or change those ballots, and equally impossible for either Plaintiff to cast another ballot as doing so would contravene Arizona law.

---

[12] Given the urgency of the compressed time constraints in this and similar election matters, this Court elected, with the parties' agreement, to hear argument on the Motions to Dismiss simultaneously with hearing the evidence on the relief sought by Plaintiffs in the Complaint. The Court determined that doing otherwise could negatively impact or potentially preclude a timely resolution including appeal for the parties.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                                11/29/2020

Plaintiffs have alleged six causes of action, and Defendants and Intervenor have moved to dismiss all of them. The Court has not expressly and individually called out above each of those claims because Plaintiffs' underlying allegations and asserted injuries are one nucleus, on which all claims are founded. None of Plaintiffs' claims survive dismissal for the reasons addressed above. Furthermore, were none of the grounds warranting dismissal of the Complaint on its face upheld, Plaintiffs' evidence did not meet the burden of proof necessary to establish that (1) the tabulators' inability to automatically read Plaintiffs' ballots was caused by Defendants and by the tabulators malfunctioning as opposed to Plaintiffs' completion and/or handling of their ballots; (2) Plaintiffs actually suffered an injury; and (3) Plaintiffs' requested relief is both possible and addresses their perceived injuries.

**IT IS ORDERED** therefore dismissing with prejudice this action for failure to state a claim upon which relief can be granted, or alternatively, denying the relief sought by Plaintiffs given their failure to produce evidence demonstrating entitlement to same.

As no further matters remain pending, the Court signs this minute entry as a final Judgment entered under Ariz. R. Civ. P. 54(c).

HONORABLE MARGARET R. MAHONEY
JUDGE OF THE SUPERIOR COURT

\* \* \* \*

**PLEASE NOTE:**  This Division requires that all motions, responses, replies and other Court filings in this case must be submitted individually.  Counsel shall not combine any motion with a responsive pleading. All motions are to be filed separately and designated as such. **No filing will be accepted if filed in combination with another. Additionally, all filings shall be fully self-contained and shall not "incorporate by reference" other separate filings for review and consideration as part of the pending filing.**

**ALERT:**  Due to the spread of COVID-19, the Arizona Supreme Court Administrative Order 2020-79 requires all individuals entering a Court facility to wear a mask or face covering at **all times** while they are in the Court facility. With limited exceptions, the Court will not provide masks or face coverings. Therefore, any individual attempting to enter the Court facility must have

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-014562                                    11/29/2020

an appropriate mask or face covering to be allowed entry to the Court facility. Any person who refuses to wear a mask or face covering as directed will be denied entrance to the Court facility or asked to leave. In addition, all individuals entering a Court facility will be subject to a health screening protocol. Any person who does not pass the health screening protocol will be denied entrance to the Court facility.

# EXHIBIT B

Clerk of the Superior Court
*** Filed ***
12/4/2020 4:05 p.m.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                    12/04/2020


                                    CLERK OF THE COURT
HONORABLE RANDALL H. WARNER             C. Ladden
                                         Deputy


KELLI WARD                          DENNIS I WILENCHIK

v.

CONSTANCE JACKSON, et al.           SARAH R GONSKI


                                    ROOPALI HARDIN DESAI
                                    JOSEPH EUGENE LA RUE
                                    DAVID SPILSBURY
                                    ROY HERRERA
                                    DANIEL A ARELLANO
                                    COURT ADMIN-CIVIL-ARB DESK
                                    DOCKET-CIVIL-CCC
                                    JUDGE WARNER
                                    BRUCE SPIVA
                                    PERKINS COIE LLP
                                    700 THIRTEENTH STREET NW
                                    SUITE 600
                                    WASHINGTON DC  20005


MINUTE ENTRY


East Court Building – Courtroom 414

9:15 a.m. This is the time set for a continued Evidentiary Hearing on Plaintiff's anticipated election contest petition via GoToMeeting.

Docket Code 901                    Form V000A                    Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                    12/04/2020


    <u>The following parties/counsel are present virtually through GoToMeeting and/or
telephonically:</u>

- Plaintiff Kelli Ward is represented by counsel, John D. Wilenchik.

- Defendants Constance Jackson, Felicia Rotellini, Fred Yamashita, James McLaughlin,
  Jonathan Nez, Luis Alberto Heredia, Ned Norris, Regina Romero, Sandra D. Kennedy,
  Stephen Roe Lewis, and Steve Gallardo (collectively, the "Biden Elector Defendants")
  are represented by counsel, Sarah Gonski, Bruce Spiva (*pro hac vice*), Daniel Arellano,
  and Roy Herrera.

- Intervenors Adrian Fontes (in his official capacity as Maricopa County Recorder) and
  Maricopa County Board of Supervisors (collectively, "County Intervenors") and are
  represented by counsel, Thomas Liddy, Emily Craiger, and Joseph La Rue.

- Intervenor Katie Hobbs (in her official capacity as the Arizona Secretary of State) is
  represented by counsel, Rooplai Desai and Kristen Yost. State Election Director Sambo
  "Bo" Dul is also present.

    Counsel for Biden Elector Defendants addresses the court as to the court's ruling denying
any Rule 50 motion practice after the conclusion of Plaintiff's case. Discussion is held thereon
and counsel for Biden Elector Defendants states his position on the record. The court affirms its
prior ruling denying the request for any Rule 50 motion practice.

    A record of the proceedings is made digitally in lieu of a court reporter.

    Biden Elector Defendants' Case:

    Linton Mohammed is sworn and testifies.

    Biden Elector Defendants' exhibit 16 is received in evidence.

    Linton Mohammed is excused.

    Biden Elector Defendants rest.

    Intervenor Secretary of State's Case:

    Sambo "Bo" Dul is sworn and testifies.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                                          12/04/2020

Intervenor Secretary of State's exhibit 32 is received in evidence.

Sambo "Bo" Dul is excused.

Intervenor Secretary of State rests.

**LET THE RECORD REFLECT** that the court notes its prior acquaintance with County Intervenors' witness, Reynaldo Valenzuela, due to election matters while serving previously as the civil presiding judge.

County Intervenors' Case:

Reynaldo Valenzuela is sworn and testifies.

County Intervenors' exhibit 29 is received in evidence.

10:31 a.m. The court stands at recess.

10:41 a.m. Court reconvenes with the parties and respective counsel present.

A record of the proceedings is made digitally in lieu of a court reporter.

Reynaldo Valenzuela continues to testify.

County Intervenors' exhibit 30 is received on evidence.

Reynaldo Venezuela is excused.

Scott Jarrett is recalled and testifies further.

Scott Jarrett is excused.

County Intervenors rest.

Plaintiff's Rebuttal:

Liesl Emerson is sworn and testifies.

Liesl Emerson is excused.

Docket Code 901                          Form V000A                          Page 3

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                            12/04/2020

Plaintiff rests.

11:30 a.m. The court stands at recess.

11:36 a.m. Court reconvenes with the parties and respective counsel present.

A record of the proceedings is made digitally in lieu of a court reporter.

Closing arguments are presented.

Based on the testimony and evidence presented,

**IT IS ORDERED** taking this matter under advisement with a written ruling to be issued as a "**LATER**:" to this minute entry.

Pursuant to the orders entered, and there being no further need to retain the exhibits not offered in evidence in the custody of the Clerk of Court,

**LET THE RECORD FURTHER REFLECT** counsel indicate on the record that the courtroom clerk may dispose of Plaintiff's exhibits 2 through 13 and 15; County Intervenors' exhibit 21; and Intervenor Secretary of State's exhibits 33 and 34 not offered or received in evidence.

12:22 p.m. Matter concludes.

**LATER:**

Based on the evidence presented, the Court makes the following findings, conclusions, and orders. For reasons that follow, the relief requested in the Petition is denied.

1.      **Background.**

On November 30, 2020, Governor Ducey certified the results of Arizona's 2020 general election, and the Biden/Harris ticket was declared the winner of Arizona's 11 electoral votes. The same day, Plaintiff filed this election challenge under A.R.S. § 16-672. In order to permit this matter to be heard and appealed (if necessary) to the Arizona Supreme Court before the Electoral College meets on December 14, 2020, the Court held an accelerated evidentiary hearing on December 3 and 4, 2020.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                    12/04/2020


**2.        The Burden Of Proof In An Election Contest.**

A.R.S. § 16-672 specifies five grounds on which an election may be contested, three of which are alleged here:

> A. Any elector of the state may contest the election of any person declared elected to a state office, or declared nominated to a state office at a primary election, or the declared result of an initiated or referred measure, or a proposal to amend the Constitution of Arizona, or other question or proposal submitted to vote of the people, upon any of the following grounds:
>
> 1. For misconduct on the part of election boards or any members thereof in any of the counties of the state, or on the part of any officer making or participating in a canvass for a state election.
>
> . . .
>
> 4. On account of illegal votes.
>
> 5. That by reason of erroneous count of votes the person declared elected or the initiative or referred measure, or proposal to amend the constitution, or other question or proposal submitted, which has been declared carried, did not in fact receive the highest number of votes for the office or a sufficient number of votes to carry the measure, amendment, question or proposal.

A.R.S. § 16-672(A)(1). Arizona law provides two remedies for a successful election contest. One is setting aside the election. A.R.S. § 16-676(B). The other is to declare the other candidate the winner if "it appears that a person other than the contestee has the highest number of legal votes." A.R.S. § 16-676(C).

The Plaintiff in an election contest has a high burden of proof and the actions of election officials are presumed to be free from fraud and misconduct. *See Hunt v. Campbell*, 19 Ariz. 254, 268, 169 P. 596, 602 (1917) ("the returns of the election officers are prima facie correct and free from the imputation of fraud"); *Moore v. City of Page*, 148 Ariz. 151, 156, 713 P.2d 813, 818 (App. 1986) ("One who contests an election has the burden of proving that if illegal votes were cast the illegal votes were sufficient to change the outcome of the election."). A plaintiff alleging misconduct must prove that the misconduct rose to the level of fraud, or that the result would have been different had proper procedures been used. *Moore*, 148 Ariz. at 159, 713 P.2d

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                          12/04/2020

at 821. "[H]onest mistakes or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not void an election, unless they affect the result, or at least render it uncertain." *Findley v. Sorenson*, 35 Ariz. 265, 269, 276 P. 843, 844 (1929).

These standards derive, in large part, from Arizona's constitutional commitment to separation of powers. Ariz. Const. Art. 3. The State Legislature enacts the statutes that set the rules for conducting elections. The Executive Branch, including the Secretary of State and county election officials, determine how to implement those legislative directives. These decisions are made by balancing policy considerations, including the need to protect against fraud and illegal voting, the need to preserve citizens' legitimate right to vote, public resource considerations, and—in 2020—the need to protect election workers' health. It is not the Court's role to second-guess these decisions. And for the Court to nullify an election that State election officials have declared valid is an extraordinary act to be undertaken only in extraordinary circumstances.

**3.      The Evidence Does Not Show Fraud Or Misconduct.**

A.R.S. § 16-672(A)(1) permits an election contest "[f]or misconduct on the part of election boards or any members thereof in any of the counties of the state, or on the part of any officer making or participating in a canvass for a state election." Plaintiff alleges misconduct in three respects. First is that insufficient opportunity was given to observe the actions of election officials. The Court previously dismissed that claim as untimely. *See Lubin v. Thomas*, 213 Ariz. 496, 497, 144 P.3d 510, 511 (2006) ("In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice."). The observation procedures for the November general election were materially the same as for the August primary election, and any objection to them should have been brought at a time when any legal deficiencies could have been cured.

Second, Plaintiff alleges that election officials overcounted mail-in ballots by not being sufficiently skeptical in their comparison of signatures on the mail-in envelope/affidavits with signatures on file. Under Arizona law, voters who vote by mail submit their ballot inside an envelope that is also an affidavit signed by the voter. Election officials review all mail-in envelope/affidavits to compare the signature on them with the signature in voter registration records. If the official is "satisfied that the signatures correspond," the unopened envelope is held until the time for counting votes. If not, officials attempt to contact the voter to validate the ballot. A.R.S. § 16-550(A).

This legislatively-prescribed process is elaborated on in the Secretary of State's Election Procedures Manual. The signature comparison is just one part of the verification process. Other

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                    12/04/2020

safeguards include the fact that mail-in ballots are mailed to the voter's address as listed in voter registration records, and that voters can put their phone number on the envelope/affidavit, which allows election officials to compare that number to the phone number on file from voter registration records or prior ballots.

Maricopa County election officials followed this process faithfully in 2020. Approximately 1.9 million mail-in ballots were cast and, of these, approximately 20,000 were identified that required contacting the voter. Of those, only 587 ultimately could not be validated.

The Court ordered that counsel and their forensic document examiners could review 100 randomly selected envelope/affidavits to do a signature comparison. These were envelope/affidavits as to which election officials had found a signature match, so the ballots were long ago removed and tabulated. Because voter names are on the envelope/affidavits, the Court ordered them sealed. But because the ballots were separated from the envelope/affidavits, there is no way to know how any particular voter voted. The secrecy of their votes was preserved.

Two forensic document examiners testified, one for Plaintiff and one for Defendants. The process forensic document examiners use to testify in court for purposes of criminal guilt or civil liability is much different from the review Arizona election law requires. A document examiner might take hours on a single signature to be able to provide a professional opinion to the required degree of certainty.

Of the 100 envelope/affidavits reviewed, Plaintiff's forensic document examiner found 6 signatures to be "inconclusive," meaning she could not testify that the signature on the envelope/affidavit matched the signature on file. She found no sign of forgery or simulation as to any of these ballots.

Defendants' expert testified that 11 of the 100 envelopes were inconclusive, mostly because there were insufficient specimens to which to compare them. He too found no sign of forgery or simulation, and found no basis for rejecting any of the signatures.

These ballots were admitted at trial and the Court heard testimony about them and reviewed them. None of them shows an abuse of discretion on the part of the reviewer. Every one of them listed a phone number that matched a phone number already on file, either through voter registration records or from a prior ballot. The evidence does not show that these affidavits are fraudulent, or that someone other than the voter signed them. There is no evidence that the manner in which signatures were reviewed was designed to benefit one candidate or another, or that there was any misconduct, impropriety, or violation of Arizona law with respect to the review of mail-in ballots.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                      12/04/2020

Third, Plaintiff alleges errors in the duplication of ballots. Arizona law requires election officials to duplicate a ballot under a number of circumstances. One is where the voter is overseas and submits a ballot under UOCAVA, the Uniformed And Overseas Citizens Absentee Voting Act. Another is where the ballot is damaged or otherwise cannot be machine-tabulated. When a duplicate is necessary, a bipartisan board creates a duplicate ballot based on the original. A.R.S. § 16-621(A). In 2020, Maricopa County had 27,869 duplicate ballots out of more than 2 million total ballots. The vast majority of these were either mail-in ballots or UOCAVA ballots. 999 of them came from polling places.

The Court ordered that counsel could review 100 duplicate ballots. Maricopa County voluntarily made another 1,526 duplicate ballots available for review. These ballots do not identify the voter so, again, there is no way to know how any individual voter voted. Of the 1,626 ballots reviewed, 9 had an error in the duplication of the vote for president.

Plaintiff called a number of witnesses who observed the duplication process as credentialed election observers. There was credible testimony that they saw errors in which the duplicated ballot did not accurately reflect the voter's apparent intent as reflected on the original ballot. This testimony is corroborated by the review of the 1,626 duplicate ballots in this case, and it confirms both that there were mistakes in the duplication process, and that the mistakes were few. When mistakes were brought to the attention of election workers, they were fixed.

The duplication process prescribed by the Legislature necessarily requires manual action and human judgment, which entail a risk of human error. Despite that, the duplication process for the presidential election was 99.45% accurate. And there is no evidence that the inaccuracies were intentional or part of a fraudulent scheme. They were mistakes. And given both the small number of duplicate ballots and the low error rate, the evidence does not show any impact on the outcome.

The Court finds no misconduct, no fraud, and no effect on the outcome of the election.

4.      **The Evidence Does Not Show Illegal Votes.**

A.R.S. § 16-672(A)(2) permits an election contest "[o]n account of illegal votes." Based on the facts found above, the evidence did not prove illegal votes, much less enough to affect the outcome of the election. As a matter of law, mistakes in the duplication of ballots that do not affect the outcome of the election do not satisfy the burden of proof under Section 16-672(A)(2).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2020-015285                                    12/04/2020

**5.      The Evidence Does Not Show An Erroneous Vote Count.**

A.R.S. § 16-672(A)(5) permits an election contest on the ground that, "by reason of erroneous count of votes" the candidate certified as the winner "did not in fact receive the highest number of votes." Plaintiff has not proven that the Biden/Harris ticket did not receive the highest number of votes.

**6.      Orders.**

Based on the foregoing,

**IT IS ORDERED** denying the relief requested in the Petition.

**IT IS FURTHER ORDERED** denying the request to continue the hearing and permit additional inspection of ballots.

**IT IS FURTHER ORDERED**, as required by A.R.S. § 16-676(B), confirming the election.

**IT IS FURTHER ORDERED** that any request for costs and/or attorneys' fees be filed, and a form of final judgment be lodged, no later than January 5, 2020. If none of these is filed or lodged, the Court will issue a minute entry with Rule 54(c) language dismissing all remaining claims.

The Court finds no just reason for delay and enters this partial final judgment under Ariz. R. Civ. P. 54(b). The Court makes this finding for purposes of permitting an immediate appeal to the Arizona Supreme Court.

/ s / RANDALL H. WARNER

_____
JUDGE OF THE SUPERIOR COURT